## AFFIDAVIT OF SPECIAL AGENT TYLER DELORME IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, Special Agent Tyler Delorme, having been sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigations and have been since July 2017. Since December 2017, I have been assigned to the Organized Crime Task Force of the FBI's Boston Division. I have received extensive training in narcotics enforcement and illegal gambling and organized crime investigations, including the following: twenty-one (21) weeks of basic training at the FBI Academy in Quantico, Virginia, which included approximately three weeks of training related to organized crime and drug investigations, financial crimes and money laundering; and numerous hours of on-the-job training in illegal gambling and organized crime investigations. I have also attended a money laundering seminar regarding how criminals launder the proceeds of criminal activity.

2.      Many of the investigations in which I have participated were national in scope, and required me to work closely, and to share information and intelligence, with members of other law enforcement agencies, including the Massachusetts State Police ("MSP"), the Drug Enforcement Administration ("DEA"), Homeland Security Investigations, Alcohol Tobacco and Firearms ("ATF") and the United States Attorney's Office for the District of Massachusetts.

3.      As an FBI Special Agent, I have used various investigatory tools and techniques, including confidential informants, cooperating witnesses, undercover agents, physical surveillance, search warrants, telephone toll analysis, court-authorized electronic surveillance, grand jury investigations, and witness interviews. I am familiar with the benefits and limitations of these techniques. I have also participated in the execution of search warrants resulting in the seizure of bookmaking ledgers and related paperwork, both physical and electronic; United States

currency; records of monetary transactions; bettor lists and other documents relating to illegal gambling; and computers, cell phones, and other electronic devices used in the conduct of illegal gambling businesses.

4.      Currently, FBI, MSP, the National Insurance Crime Bureau (NICB) and a large number of local police departments are currently investigating Rafael DAVILA (dob xx/xx/88), Efrain VILLANUEVA (dob xx/xx/90), Jose TORRES, a/k/a "Goldy" (dob xx/xx/1986), Santo FELIBERTY (dob xx/xx/1989, ssn: xxx-xx-2241), and other coconspirators (the "TARGETS") for violations of 18 U.S.C. §§ 371, 2314 (interstate transportation of stolen property), 18 U.S.C. § 1956 (money laundering), and conspiracy to commit those offenses (hereinafter the "TARGET OFFENSES").

5.      I am the case agent for this investigation and have worked closely with other FBI special agents, officers from the Massachusetts State Police and other law enforcement personnel during this investigation. Accordingly, I am familiar with the facts concerning this investigation. The facts in this affidavit are based on my personal knowledge, and on information developed during this investigation, including information I have received from other law enforcement personnel, and other investigative efforts such as review of reports and records, review of previously submitted search warrant affidavits, review of physical and digital evidence, review of surveillance video, physical surveillance, debriefing of human sources such as victims and subject matter experts, and from persons and law enforcement officers with knowledge regarding relevant facts.  All dates, time and amounts are approximate. Because this affidavit is being submitted for the limited purpose of securing the requested search warrants, I have not included each and every fact known to me concerning this investigation.

## I.      PURPOSE OF AFFIDAVIT

6.      I make this affidavit in support of an application for search warrants under federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for precision location information and historical cell site location information relating to the following mobile phones (together, the "TARGET PHONES"):

    a.   <u>23-MJ-5005</u>, the mobile phone assigned 413-355-6609 ("TARGET PHONE 1") for historical cell site location information and prospective precision location information about TARGET PHONE 1 for a period of thirty days. The user of TARGET PHONE 1 is believed to be Rafael DAVILA. The service provider for TARGET PHONE 1 is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054. TARGET PHONE 1 is further described in Attachment A-1 and the information to be seized is further described in Attachment B-1.

    b.   <u>23-MJ-5006</u>, the mobile phone assigned 413-612-5858 ("TARGET PHONE 3") for historical cell site location information and prospective precision location information about TARGET PHONE 3 for a period of thirty days. The user of TARGET PHONE 3 is believed to be Jose TORRES. The service provider for TARGET PHONE 3 is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054. TARGET PHONE 3 is further described in Attachment A-3 and the information to be seized is further described in Attachment B-3.

    c.   <u>23-MJ-5007</u>, the mobile phone assigned 860-595-9762 ("TARGET PHONE 4") for historical cell site location information. The user of TARGET PHONE 4 is believed to historically have been Santo FELIBERTY. The service provider for TARGET PHONE 4 is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408. TARGET PHONE 4 is further described in Attachment A-4 and the information to be seized is further described in Attachment B-4.

    d.   <u>23-MJ-5008</u>, the mobile phone assigned 860-712-9926 ("TARGET PHONE 5") for historical cell site location information and prospective precision location information about TARGET PHONE 5 for a period of thirty days. The user of TARGET PHONE 5 is believed to be Santo FELIBERTY. The service provider for TARGET PHONE 5 is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408. TARGET PHONE 5 is further described in Attachment A-5 and the information to be seized is further described in Attachment B-5.

7.      I also make this affidavit in support of applications for Orders, pursuant to Rule 41(e)(2)(C) and Title 18, United States Code, Section 3117, authorizing agents of the FBI to surreptitiously install, monitor, repair, replace and use real-time Global Positioning System ("GPS") mobile tracking devices for 45 days on the following motor vehicle located in the District of Massachusetts or that will be located in the District of Massachusetts for the purpose of monitoring and recording data regarding the movement of this motor vehicle both inside and outside the District of Massachusetts:

   a.   23-MJ-5009: a maroon Acura MDX, unknown year, potentially bearing New Hampshire V29396, Connecticut AX88253 or Rhode Island 435977, with an unknown VIN, and GPS tracking device currently installed, located at 799 S. West Street, Feeding Hills, Massachusetts (hereinafter "SUBJECT VEHICLE 1" or the "MAROON ACURA MDX").

8.      As further described below, there is probable cause to believe that: (a) the TARGETS described below have committed, are committing, and will continue to commit violations of the TARGET OFFENSES; (b) SUBJECT VEHICLE 1 is being and will be used to facilitate the commission of the TARGET OFFENSES; and (c) the data obtained from the GPS devices about the geographic location of SUBJECT VEHICLE 1 will constitute and/or will lead to evidence, fruits, and instrumentalities of the TARGET OFFENSES as well as to the identification of the individuals who are committing those and related crimes. There is also probable cause to believe that SUBJECT VEHICLE 1 is an instrumentality of the TARGET OFFENSES described above in that it is being used in the commission of the TARGET OFFENSES.

9.      This application also requests, for the purpose of installing, maintaining, and/or removing the tracking devices, authority to make covert entry onto the driveway / parking area of 799 S. West Street, Feeding Hills, Massachusetts, the location where SUBJECT VEHICLE 1 is

expected to be located.  During instances of surveillance over the past 30 days, investigators

continue to observe SUBJECT VEHICLE 1 parked in the driveway of 799 S. West Street, Feeding

Hills, Massachusetts. As such, I am also seeking authority to enter onto the premises of 799 S.

West Street, Feeding Hills, Massachusetts in order to install, monitor, repair, and/or replace the

GPS tracking device(s). I am not seeking authority to enter the physical structure, or residence

located at 799 S. West Street, Feeding Hills, Massachusetts. The premises of 799 S. West Street,

Feeding Hills, Massachusetts to be entered onto is further described in Attachment C-1.

## II.      OVERVIEW OF INVESTIGATION

10.      This affidavit is made in connection with an ongoing investigation by FBI, MSP,

and numerous other law enforcement personnel and local police departments in Massachusetts and

New Hampshire relating to the theft of catalytic converters.  Based upon information learned from

law enforcement sources, and from other national investigations I have become familiar with the

nature of catalytic converters, their resale, and the patterns and practices of catalytic converter

thieves. Catalytic converters are a component of an automotive vehicle's exhaust device that reduce

the toxic gas and pollutants from a vehicle's internal combustion engine into safe emissions by

catalyzing a redox reaction process. Catalytic converters use precious metals in their center or

"core" and are regularly targeted for theft due to the high value of these metals. Catalytic converters

are required components on all combustion engine automobiles in the United States as regulated

by the Environmental Protection Agency ("EPA"). Every individual state in the United States

dictates emission standards for their catalytic converters, which makes the concentration of

precious metals in catalytic converters vary from state-to-state. Thus, if an individual state requires

higher emission standards, such as California, the catalytic converters on vehicles registered in

that state will contain a higher concentration of precious metals.

11.     Thieves steal catalytic converters from vehicles for the precious metals the cores contain, including palladium, platinum, and rhodium. Some of these precious metals are more valuable per ounce than gold and their value has been increasing in recent years. The black-market price for certain catalytic converters can be above $1,000 each. Catalytic converters are often stolen from the underside of vehicles by using handheld power tools (including reciprocating saws, sawzalls, pneumatic or hydraulic pipe-cutters, or oxy-acetylene gas cutting torches) and automotive tools (floor jacks and jack stands), and their theft can be completed within a few minutes or less. Additionally, catalytic converters often lack unique serial numbers, VIN information, or other distinctive identification features, making them difficult to trace to their lawful owner. Thus, the theft of catalytic converters has become increasingly popular because of their value, relative ease to steal, and their lack of identifying markings

12.     Catalytic converter thieves are well informed about which vehicle makes and models contain the most precious metals in their catalytic converters. Thieves typically obtain pricing information from an online pricing application. Catalytic converter thieves (sometimes referred to as "cutters") often conduct searches in residential neighborhoods, parking lots, and other locations to steal the most high-value catalytic converters. Catalytic converter theft has become a nationwide problem across a multitude of state, local, and federal jurisdictions. The theft of a vehicle's catalytic converter results in damage that renders the vehicle inoperable until properly replaced. Not only are the vehicles often mechanically unable to be driven, but they are also not legally operable under the EPA regulations until repaired. Additionally, certain vehicles may have multiple catalytic converters that can be taken from a single vehicle.

13.     The process to remove the precious metals from the catalytic converters is complex and may release toxic gases. Therefore, catalytic converters are typically sold intact to an

extraction company. The extraction company will remove the core from the catalytic converter using a "de-canning" process that crushes the honeycomb structure (or "brick") inside the core, resulting in precious metal powders. The process of de-canning will crush the core or brick inside the catalytic converters; new bricks are not available for sale to the general public. The precious metal powders are then sold to a metal refinery for further processing.

## A.   TARGETS

14.   In the course of the investigation, investigators have identified a number of TARGETS involved in the TARGET OFFENSES. An overview of the TARGETS follows, with further specific information below.

   a.   Rafael DAVILA is believed to be one of the primary individuals involved in cutting the catalytic converters from the vehicles, and is directly associated with the MAROON ACURA MDX utilized in the thefts.  DAVILA is the user of TARGET PHONE 1 and is believed to employ TARGET PHONE 1 in furtherance of the TARGET OFFENSES. The MAROON ACURA MDX is frequently parked at DAVILA's residence at 799 S West Street, Feeding Hills, MA.

   b.   Efrain VILLANUEVA was identified by local police to be operating a secondary vehicle (a Chevrolet Suburban) owned by DAVILA's father that was observed in the area of catalytic converter thefts involving the MAROON ACURA MDX. VILLANUEVA in the secondary vehicle is believed to have been serving in a lookout function.  Review of call detail records showed that VILLANUEVA was in communication with DAVILA in and around the time of his identification by local police.  See pp. 45-48.

   c.   Jose TORRES is suspected coconspirator potentially involved in the monetization of the stolen catalytic converters. TORRES is the owner of an entity known as Scrapguys413 LLC, that advertises on Facebook seeking to pay money for catalytic converters. TORRES advertises TARGET PHONE 3 as the contact number for Scrapguys413. It is believed that TORRES is a potential contact through which the stolen catalytic converters are monetized after being stolen.  TORRES is believed to be the user of TARGET PHONE 3. TARGET PHONE 1 and TARGET PHONE 3 are in frequent contact before and after the catalytic converter thefts, consistent with coordination relative to the stolen property. See pp. 11-13.

d.  Santo FELIBERTY specific role is currently under investigation, but he has been identified as a coconspirator and to be providing logistical support in terms of a physical premises to store the MAROON ACURA MDX (381-383 Parker Street), and providing DAVILA use of a black Dodge Ram for a trip to Home Depot (operated by FELIBERTY, and owned by FELIBERTY's mother). Santo FELIBERTY is believed to be the user of TARGET PHONE 4 (historically) and TARGET PHONE 5 (currently). As discussed below, TARGET PHONE 1 and TARGET PHONE 4 and 5 are in frequent contact before and after the catalytic converter thefts, consistent with coordination relative to the TARGET OFFENSES. See pp. 76-81.

   i.  FELIBERTY is believed to reside at 381-383 Parker Street, Springfield, MA, which is an address of interest to the investigation. 381-383 Parker Street is owned by FELIBERTY's paramour, Alisa FELIBERTY. This premises has a free-standing garage at the rear.  As described below, the MAROON ACURA MDX was observed to travel to 381-383 Parker Street before and after recent catalytic converter thefts, and was parked at this location. The MAROON ACURA MDX was also stored at this location in the days following the rear window being smashed out.  See pp. 78-81.

   ii.  Santo FELIBERTY also operates a black Dodge Ram (Massachusetts Reg PS4821) that is registered to Evilin Lopez, who is FELIBERTY's mother. FELIBERTY was recently stopped by police while operating the black Dodge Ram, and Alisa FELIBERTY came to take possession of the vehicle. The black Dodge Ram has been observed at DAVILA's address 799 S. West Street. The black Dodge Ram was also utilized by DAVILA to travel to Home Depot to purchase Sawzall blades on December 28, 2022, prior to the Easthampton and Holyoke catalytic converter thefts. See pp. 72.

   iii.  According to subscriber records, Evilin Lopez is the financially liable party on TARGET PHONE 4, and TARGET PHONE 5. Evilin Lopez is believed to be FELIBERTY's mother.  Santo FELIBERTY is listed as the "user" of TARGET PHONE 4 in the subscriber records, and law enforcement databases. Based upon review of the call detail records, Santo FELIBERTY is believed to be the actual user of TARGET PHONE 5. See pp. 76-78.

   iv.  As described below, TARGET PHONE 1 and TARGET PHONE 4 were in frequent contact before and after the catalytic converter thefts. Furthermore, TARGET PHONE 1 and TARGET PHONE 5 were in frequent contact before and after the catalytic converter thefts.  See pp. 76-78.

1. **RAFAEL DAVILA**

15.    I am familiar with Rafael DAVILA (dob xx/xx/1988, ssn: xxx-xx-7257). DAVILA has been identified to be the user of TARGET PHONE 1.[1]  A photograph of DAVILA from the Massachusetts RMV follows:



16.    I am also familiar with DAVILA's criminal history. DAVILA has a number of arrests for violent crimes and receipt of stolen motor vehicles that did not result in conviction. DAVILA's criminal history lists the following pertinent convictions:

   a.   Connecticut Docket No. U04W-CR19-0458342-S, charging Larceny 3rd Degree, for which DAVILA was convicted and sentenced on August 23, 2021, for which DAVILA was sentenced to 5 years suspended, with a conditional discharge for 3 years.

   b.   Palmer District Court, Docket No. 2043CR000596, charging obscuring license plate, and negligent operation, for which DAVILA was convicted on July 10, 2020, for which DAVILA was sentenced to 90 days committed.

   c.   Palmer District Court, Docket No. 2043CR000594, charging negligent operation for which DAVILA was convicted on July 10, 2020, and for which DAVILA was sentenced to 90 days committed.

---

[1] Investigators have attributed the use of TARGET PHONE 1 to DAVILA based upon the use of TARGET PHONE 1 by DAVILA. In addition to the actual use of the phone number to contact DAVILA described above, investigators obtained records for a Google account thepartcloud@gmail.com wherein DAVILA identified himself as the user of the account and listed the 413-355-6609 phone number.  Investigators also reviewed records from eBay for a user account associated with thepartcloud@gmail.com that lists Rafael DAVILA as the user and lists the phone number associated with the account as 413-355-6609.

d. Albany County Court (NY), Docket No. 2-5066, charging burglary 3rd degree, and illegal entry to commit a felony, for which DAVILA was convicted on March 6, 2015, and for which DAVILA was sentenced to 1 to 3 years.

e. Palmer District Court, Docket No. 0843CR000207, charging receiving stolen property, for which DAVILA was convicted on December 8, 2008, and for which he was sentenced to 6 months suspended.

f. Springfield District Court, Docket No. 0823CR2025, charging two counts of receiving stolen motor vehicle, and sale of motor vehicle parts with a defaced VIN, for which DAVILA was convicted on March 3, 2009, and for which he was placed on probation.

17.     I am also familiar with Dudley District Court, Docket No. 2064CR001167, charging DAVILA with conspiracy and vandalism. I have reviewed the Sturbridge Police report #20-208-AR related to this incident. In sum and substance, the report described DAVILA's involvement in a March 30, 2020, theft of two jet skis and a trailer. Ultimately, the stolen jet skis were located in a storage unit rented in West Springfield, Massachusetts.  Along with the stolen jet skis, investigators also located 7 catalytic converters. Surveillance video depicted DAVILA and a coconspirator dropping off the stolen jet skis to the unit shortly after they were stolen. This incident also involved the use of an anonymized license plate that was not associated with the white SUV utilized to commit the theft. This case was later dismissed by the prosecutor.

**2.      EFRAIN VILLANUEVA**

18.     I am familiar with Efrain VILLANUEVA (dob xx/xx/1990, ssn: xxx-xx-8396). A photograph of VILLANUEVA from the Massachusetts RMV follows:



10

19.     I am familiar with Efrain VILLANUEVA's criminal history. VILLANUEVA's

criminal history lists the following pertinent conviction:

> a.  Hampden Superior Court, Docket No. 1879CR00447, charging Possession to
> Distribute Heroin and Conspiracy to violate controlled substance act, for which
> VILLANUEVA was convicted on June 8, 2021, and for which VILLANUEVA
> was placed on probation until June 8, 2023, with a 2.5 years sentence suspended
> during the period of probation.

### 3.     JOSE TORRES

20.     I am familiar with Jose TORRES (dob xx/xx/1986, ssn: xxx-xx-2840). TORRES

has been identified to be the user of TARGET PHONE 3.[2]  A photograph of TORRES from the

Massachusetts RMV follows:



21.     I am familiar with Jose TORRES' criminal history. TORRES' criminal history lists

the following pertinent convictions:

> a.  Hampden Superior Court, Docket No. 1379CR00851, charging Possession to
> Distribute a Class A substance, for which TORRES was convicted on April 27,
> 2015, and for which TORRES was placed sentenced to 2 to 3 years in state
> prison.

> b.  Springfield District Court, Docket No. 1323CR3896, charging Receipt of
> Stolen Property, for which TORRES was convicted on August 7, 2013, and
> sentenced to 120 days committed.

---

[2] Investigators have reviewed the subscriber records from T-Mobile for TARGET PHONE
3.  Those records listed JOSE TORRES (dob xx/xx/1986, ssn xxx-xx-2840) as the subscriber, with
24 Leete Street, Springfield, MA, as the address.

c.  Holyoke District Court, Docket No. 1117CR1979, charging Breaking and Entering in the Night to Commit a Felony, for which TORRES was convicted on February 12, 2013, and placed on probation, which he violated and was sentenced to 6 months.

d.  Springfield District Court, Docket No. 0623CR12148, charging Altering VIN on Motor Vehicle, and Receiving Stolen Motor Vehicle, for which TORRES was convicted on February 13, 2009, and sentenced to 3 months.

22.     On January 14, 2021, TORRES filed a certificate of organization with the Massachusetts Secretary of State creating an entity named "Scrapguys413 LLC."  This entity lists TORRES as its resident agent and a principal office at 24 Leete Street, Springfield, Massachusetts. The certificate of organization lists the general character of the business as "SCRAP METAL JUNK CARS RECYCLING CAT CONVERTERS BATTERIES ALTERNATORS N M ORE." Investigators located a Facebook page for "Scrapguys413 LLC" located at https://www.facebook.com/profile.php?id=100063907218541 (the "SCRAPGUYS413 FACEBOOK"). A post to the SCRAPGUYS413 FACEBOOK page on June 20, 2021, contains an advertisement with TORRES' phone number 413-612-5858 (TARGET PHONE 3), and indicates that the company buys "cat converters", junk cars, batteries and more.

23.     Investigators have identified a Facebook account utilized by TORRES with the username "Goldy.Torres.357" (the TORRES FACEBOOK).  On the TORRES FACEBOOK page, investigators identified several posts where TORRES advertises Scrapguys413. A post on the TORRES FACEBOOK from June 30, 2022, states "Just got back we ready to keep buying" and then contains the same advertisement image posted on the SCRAPGUYS413 FACEBOOK, with TARGET PHONE 3 listed.  Another post from January 26, 2022, to the TORRES FACEBOOK

page contains the same advertisement image for Scrapguys413 and states "Paying dg price Scrapguys413 LLC".[3] A screen capture of the image follows:



4.      **SANTO FELIBERTY**

24.     I am familiar with Santo FELIBERTY (dob xx/xx/1989, ssn: xxx-xx-2241). A photograph of FELIBERTY from the Massachusetts RMV follows:

---

[3] Investigators believe that the "dg price" is a reference to the price paid by DG AUTO, a New Jersey based core buying business that purchases bulk quantities of catalytic converters. DG AUTO in fact created a phone application that provided the price that would be paid based upon the make and model vehicle from which the catalytic converter was taken.  The owner of DG AUTO, Navin Khanna, was recently subject to indictment in the Eastern District of California and the Northern District of Oklahoma in relation to the receipt of stolen catalytic converters and money laundering offenses.  *See* https://www.justice.gov/opa/pr/justice-department-announces-takedown-nationwide-catalytic-converter-theft-ring.



25.     I am familiar with Santo FELIBERTY's criminal history. FELIBERTY's criminal history lists the following pertinent conviction:

    a.   Connecticut Docket No. H14H-CR13-0665002-S, charging Larceny 1st degree, and Burglary 3rd degree, for which FELIBERTY was convicted, and sentenced on January 1, 2014, and for which FELIBERTY was sentenced to 8 years in jail, 3 years suspended, and 3 years of probation.

    b.   Connecticut Docket No. H14H-CR14-0672117-S, charging Larceny 2nd degree, for which FELIBERTY was convicted, and sentenced on October 16, 2014, and for which FELIBERTY was sentenced to 8 years in jail, 2 years suspended, and 3 years of probation.

    c.   Connecticut Docket No. H13W-CR10-0154690-S, charging Assault Personnel, for which FELIBERTY was convicted, and sentenced on March 23, 2011, to 3 years in jail, 90 days suspended and 3 years of probation.

    d.   Connecticut Docket No. H13W-MV10-0323156-S, charging Run From Police, for which FELIBERTY was convicted and sentenced on March 23, 2011, to 90 days in jail.

## III.    HISTORICAL CATALYTIC CONVERTER THEFTS

26.     I am aware of many historical organized catalytic converter thefts taking place from March 8, 2022, to January 5, 2023, involving a maroon Acura MDX with a number of unique identifying features (the MAROON ACURA MDX or SUBJECT VEHICLE 1).   All of the incidents below are, to my knowledge, unsolved catalytic converter thefts, where a similar modus operandi was employed by suspects utilizing a maroon Acura MDX.   Many other cases are under investigation but have not been included due to factors such as a lack of surveillance video or a

lack of a demonstrable tie to the maroon Acura MDX. The suspects in these thefts have been similarly attired in black for many of the thefts, and typically target commercial vehicles.  Initially, the investigation involved thefts taking place in Massachusetts. The investigation has resulted in the identification of two vehicles being used in the thefts: (1) a maroon Acura MDX, unknown year, potentially bearing New Hampshire plate V29396 or Connecticut plate AX88253 or Rhode Island plate 437955, with an unknown VIN, and GPS tracking device currently installed; and (2) a black 2015 Chevrolet Suburban, bearing Massachusetts Registration 5AVY49, VIN: 1GNSKJKC2FR674310 (hereinafter "SUBJECT VEHICLE 2" or the "BLACK 2015 SUBURBAN");  and at least three identified suspects in the actual thefts: Rafael DAVILA, Efrain VILLANUEVA, and Santos FELIBERTY. A fourth individual, Jose TORRES is believed to be involved in the transportation and monetization of stolen catalytic converters.

27.     Based upon review of the various police reports and information received from investigators familiar with the catalytic converter thefts I know that the TARGET OFFENSES involve coordination, planning and preparation.  In short, these are not crimes of opportunity. From consideration of the nature of the thefts and review of the reports related to the dozens of thefts that are under investigation, a common pattern or modus operandi has been discerned. Some aspects of the pattern are as follows.

   a.   Target Selection. It is obvious based upon the number of thefts and timing of when they occur that the suspects must identify locations where potential vehicles that they intend to target are parked in advance of the actual thefts.  A significant number of the thefts have targeted Isuzu NPR commercial vehicles.  These vehicles are typically parked in industrial parks overnight.

   b.   Coordination. Furthermore, the suspects are believed to work in teams that involve multiple individuals actually engaged in the cutting of the catalytic converters from the vehicles. Other conspirators are believed to drop off the individuals engaged in the cutting.  The thefts are believed to involve multiple vehicles: one vehicle is believed to be involved in transporting the conspirators to the vehicles and then picking them up afterward. Other conspirators are believed to be in secondary

vehicles that are not directly linked to the crime but serve a lookout function. Those other conspirators will serve as lookouts, and getaway drivers. I reasonably believe that these suspects coordinate their activities using some sort of communication devices, which I believe to be walkie-talkies or cellular phones.

c.     Discipline. Review of the police reports suggests a significant amount of discipline among the suspects. They are careful to wear masks, gloves, and dark colored clothing. I similarly expect them to be surveillance-conscious both in terms of physical surveillance and electronic surveillance that might be conducted after the fact through cell towers and other investigative techniques.  Specifically, through the investigation I have learned that Canton, Franklin, and Hanover Detectives have executed "geofence" search warrants during their investigations with no suspect devices being identified.

d.     Pre-planning and Logistical Considerations. The nature of the crimes also suggests pre-planning and logistical coordination. For example, it is clear that the thefts are committed using battery operated Sawzall tools. On multiple occasions the coloring of the tools can be discerned to be consistent with the Milwaukee brand. These battery-operated tools are expensive and must be purchased in advance. I reasonably believe that the conspirators also bring multiple batteries for the tools to ensure that the tools have a fresh charge. Additional batteries are similarly expensive and must be purchased in advance. Sawzall blades are also expensive and must be purchased in advance. Additionally, the thefts have unfolded over large distances in the same night over multiple hours. As such, I believe that the suspects obtain fuel, food, and other human necessities before engaging in these thefts for hours on end.  Lastly, the suspects have obtained license plates that they attach to the MAROON ACURA MDX that were obtained in order to remain anonymous if the vehicle was observed via surveillance or engaged by police.  The attached plates identified thus far were not reported stolen, revealing pre-planning and logistical considerations to source these license plates undertaken by the TARGETS.  A stolen registration plate would bring enhanced scrutiny to the vehicle while traveling to and from thefts.  The purchase of the New Hampshire Veterans plate, and the Connecticut plate observed on December 6, 2022, which has been attached to SUBJECT VEHICLE 1 shows that the suspects undertake efforts to anonymize the vehicle they utilize in the crimes, making identification more difficult.

28.     Investigators are also aware that in these cases there are major disruptions caused by these thefts. Individuals are left without their vehicle. Businesses are left unable to work and service their customers.  The cost of an average catalytic converter ranges between $1,000 and $5,000, depending on the vehicle's make and model. In general, the larger the engine, the more expensive the converter.  Investigators in this case have personally spoken to local automobile

repair companies and other subject matter experts who have stated that in many instances the necessary parts to make the repairs are backordered in excess of six (6) weeks, and replacement parts and labor can cost more than $10,000.

29.     On Tuesday October 25, 2022, Trooper James Melberg of the Massachusetts State Police organized and participated in a regional information sharing meeting regarding catalytic converter thefts conducted by the maroon Acura MDX.  In preparation for this meeting, Trooper Melberg along with other involved investigators including the New England State Police Information Network (NESPIN) prepared a collection of reports involving the thefts.  The below attached spreadsheet provides a timeline of the thefts.  An examination of the reports shows a maroon Acura MDX with consistent unique identifiers, occupied with suspects often wearing dark clothing, and engaged with a similar modus operandi. These suspects were identified as potentially being responsible for over three hundred (300) catalytic converter thefts.  The maroon Acura MDX utilized in these thefts was identified to have the following unique identifiers: maroon color, distinct six (6) spoke rims, chrome running boards, tinted windows, a front split grille, no front plate, and visually distinct roof racks. SUBJECT VEHICLE 1 is a maroon Acura MDX that has these six distinct identifiers.  The following chart lists historical catalytic converter thefts believed to be associated with the TARGETS.[4]

| Date | Department | Time if Known/Reported | Report Number |
|------|-----------|------------------------|---------------|
| 3/8/2022 | Milford | 11:20AM | 22-110523-OF |
| 3/13/2022 | Norwell | 03:30PM | 22-NOW-116-OF |
| 3/14/2022 | Norwell | 12:00PM | 22-NOW-115-OF |
| 3/25/2022 | Wilmington | 01:28AM | 22-368-OF |
| 3/28/2022 | Worcester | 11:59PM | |

---

[4] Of note the date reported to police may be days after the actual theft due to the fact that the victims may not have discovered the theft until attempting to start their vehicle. Investigators continue to review cell site location information for correlation of the cell sites used by TARGET PHONE 1 and the thefts.

| | | | |
|---|---|---|---|
| **5/5/2022** | Leominster | 01:33AM | 22-19052-OF |
| **5/12/2022** | Sharon | 05:45AM | 22SHA-10008-OF |
| **5/19/2022** | Medford | 03:00AM | 22010140 |
| **7/21/2022** | Lynn | 03:15AM | |
| **7/21/2022** | Wilmington | 01:30AM | 22-925-OF |
| **7/21/2022** | Wilmington | 07:24AM | 22-926-OF |
| **7/21/2022** | Wilmington | 08:29AM | 22-929-OF |
| **7/21/2022** | Wilmington | 09:34AM | 22-930-OF |
| **7/26/2022** | Easton | 01:30AM | 22-EAO-636-OF |
| **7/28/2022** | Norwood | 00:50AM[5] | 22-859-OF |
| **7/28/2022** | Woburn | 03:20AM | 22-1296-OF, 22-1297-OF |
| **8/16/2022** | Woburn | 02:33AM | 22-1438-OF, 22-1439-OF, 22-1441-OF, 22-1442-OF, 22-1443-OF, 22-1444-OF, 22-1445-OF, 22-1447-OF, 22-1449-OF, 22-1451-OF, 22-1453-OF, 22-1455-OF |
| **8/18/2022** | Plymouth | 12:50AM | |
| **8/23/2022** | Canton | 02:55AM-03:35AM | |
| **8/25/2022** | Middleton | 02:45PM | 22MID-575-OF |
| **8/30/2022** | Peabody | 04:30AM | 22-2798-OF |
| **8/30/2022** | Waltham | 03:00AM | |
| **9/1/2022** | Hingham | 03:00AM | |
| **9/1/2022** | Norwell | 08:00AM | 22-NOW-396-OF |
| **9/1/2022** | Rockland | 02:49AM | 22-ROC-42315-OF 22-ROC-42121-OF 22-ROC-42139-OF 22-ROC-42174-OF 22-ROC-42180-OF 22-ROC-42186-OF |
| **9/2/2022** | Norwell | 11:00PM | 22-NOW-403-OF |
| **9/6/2022** | Easton | 04:50 AM[6] | 22EAO-768-OF |
| **9/6/2022** | W. Bridgewater | 02:30-04:30AM[7] | 22-260-OF, 22-262-OF |
| **9/8/2022** | Chelmsford | 04:34 AM | 841126 |
| **9/8/2022** | Lawrence | 12:07AM | 22006749 |
| **9/8/2022** | Haverhill | 02:43AM | 22043034 |

[5] Investigators reviewed historical cell site location information for TARGET PHONE 1 for the dates and times approximate to the theft reported on July 28, 2022.  At 9:13 PM and 11:40 PM on July 27, 2022, TARGET PHONE 1 used a cell site located in Norwood, Massachusetts.  During this incident, Norwood Police reported a chase with the MAROON ACURA MDX.

[6] Investigators reviewed historical cell site location information for TARGET PHONE 1 for the dates and times approximate to the theft reported on September 6, 2022.  At 4:32 AM on September 6, 2022, TARGET PHONE 1 used a cell site located in Easton, Massachusetts.

[7] Investigators reviewed historical cell site location information for TARGET PHONE 1 for the dates and times approximate to the theft reported on September 8, 2022.  At 3:19 AM, and 3:42 AM on September 6, 2022, TARGET PHONE 1 used a cell site located in Brockton, Massachusetts. At 3:42 AM on September 6, 2022, TARGET PHONE 1 used a cell site located in East Bridgewater, Massachusetts.

| | | | |
|---|---|---|---|
| **9/13/2022** | Hanover | 04:10AM | 22HAN-672-OF[8] |
| **9/13/2022** | Maynard | 03:00AM | |
| **9/13/2022** | Pembroke | 02:00AM | 22-10399-OF |
| **9/15/2022** | Bellingham | 01:00AM | |
| **9/15/2022** | Franklin | 00:11AM | 2022-I-01377 |
| **9/15/2022** | Franklin | 01:40AM | 2022-I-01378 |
| **9/15/2022** | Franklin | 04:46AM | 2022-I-01379 |
| **9/15/2022** | Hudson | 04:13AM | 22HUD-1320-OF |
| **9/15/2022** | Franklin | 06:23AM | 2022-I-01389 |
| **9/20/2022** | Woburn | 01:40AM | 22-1650-OF |
| **9/20/2022** | Sudbury | 04:30AM | 22SUD-655-OF |
| **9/21/2022** | Wilmington | 01:38AM | 22-1175-OF |
| **9/21/2022** | Wilmington | 01:08AM | 22-1185-OF |
| **9/21/2022** | Wilmington | 06:30AM | 22-1176-OF |
| **9/21/2022** | Wilmington | 01:30AM | 22-1179-OF |
| **10/2/2022** | Billerica | 01:01AM | 22-2167 |
| **10/2/2022** | Haverhill | | |
| **10/2/2022** | Methuen | 03:15AM | 2200026051 |
| **10/2/2022** | Methuen | 03:40AM | 2200026055 |
| **10/2/2022** | Ipswich | 04:16AM | 22IPS-1815-OF |
| **11/24/2022** | Hooksett, NH | | 22-HKS-843-OF, 22-HKS-854-OF |
| **11/27/2022** | Millbury | 05:35AM | 22-587-OF |
| **11/27/2022** | Wilmington | 01:57AM | 22-1418-OF |
| **12/6/2022** | Bow, NH | 04:12AM | |
| **12/6/2022** | Concord, NH | 03:30AM | 22-51015-OF |
| **12/21/2022** | Manchester, NH | 01:30AM | 22-020230 |
| **12/28/2022** | East Hampton, MA | 12:40AM-3:30AM | 22-944-OF, 22-945-OF |
| **12/28/2022** | Holyoke, MA | 3:30AM-4:30AM | 22-6319-OF |
| **1/5/2023** | Framingham, MA | 12:00AM-04:30AM | 23-000101, 23-000104, 23-000113, 23-000115, 23-000131, 23-000101, 23-000132, 23-000152, 23-000154, 23-000197 |

## A.    OTHER HISTORICAL THEFTS INVOLVING MAROON ACURA MDX BEARING MAINE REGISTRATION 8314NQ

30.    As previously noted, many catalytic converter thefts are under investigation and

investigators believe that the TARGETS have taken steps to anonymize the MAROON ACURA

MDX through the switching of license plates.  Investigators are aware of multiple thefts in which

---

[8] Investigators reviewed historical cell site location information for TARGET PHONE 1 for the times approximate to the theft reported on September 13, 2022.  At 12:17 AM on September 13, 2022, TARGET PHONE 1 used a cell site located in Hingham, Massachusetts. At 4:13 AM on September 13, 2022, TARGET PHONE 1 used a cell site located in Hanover, Massachusetts.

a maroon Acura MDX reported to have been involved in catalytic converter thefts had a Maine

Registration 8314NQ attached to it.

31.     Investigators are aware of a May 20, 2022, catalytic converter theft taking place in

Norwood, Massachusetts. The following narrative (22-586-OF) written by Norwood Police

Officer Shaun Callahan follows:

> a.     On May 20, 2022, at approximately 2:02 AM, I (Officer Callahan) was
> dispatched to 1201 Bos-Prov Hwy for a report of a suspicious vehicle called in by
> Netwatch described as a red Acura MDX. It was reported that there were two
> white males wearing masks and carrying tools. It was reported that the vehicle
> had since fled south on Route 1 and then again it was reported that the vehicle
> had taken a right onto Morse Street. A possible registration plate of the vehicle
> was MA 9834NO. Officer Brooks, Officer Gamel, and Sergeant Joseph responded
> to the area.
>
> b.     When the call initially came out, I was in the area of Morse Street and Carnegie
> Row. I had initially taken Route 1 south and had not seen any vehicles matching
> that description. Upon hearing that they may have taken a right onto Morse
> Street, I took Sumner Street to Pleasant Street and Officer Gamel called off in the
> area of Morse Street and Pleasant Street. No vehicles matching this description
> were in the area. Officer Brooks said that he had been going north on Route 1
> and saw a red Acura SUV with a dealer plate on it around the time of the call.
> The description of the suspects and the vehicle was put out on Areawide 3.
>
> c.     Officer Brooks, Sergeant Joseph, and I returned to 1201 Bos-Prov Hwy to check
> for any noticeable damage to vehicles. Dispatcher McKee said she had obtained
> still images from Netwatch of the suspects and sent them to my email. Upon
> receiving the photos, the vehicle appears to be a maroon Acura MDX with a
> possible Maine registration of 8314NO. Suspect 1 is possibly a white / hispanic
> male, medium build, wearing all black clothing with green gloves and a mask,
> holding an unknown tool. Suspect 2 is wearing all black wearing a mask holding
> what appears to be a saw. These photos can be seen on the department DHQ post
> and in the Patrol Evidence folder under 22-586-OF.
>
> d.     No noticeable damage could be found on any vehicle consistent with a catalytic
> converter theft at this time.

32.     On Friday May 20, 2022, investigators received an e-mail from Norwood Detective

Jennifer Hoyle regarding a vehicle engaged in catalytic converter thefts in Norwood, Sharon, and

Walpole matching the description of the maroon Acura MDX.  Detective Hoyle related that the

suspects can be seen removing a red Sawzall tool from the passenger side of the vehicle. Suspects are similarly in appearance to those viewed in surveillance images from multiple theft sites described above. Detective Hoyle provided still images from the above incident at Boch New to You, located at 1201 Boston Providence Highway in Norwood which are attached below:

 

### 1.    05/20/22: FURTHER INVESTIGATION

33.    Investigators reviewed historical cell site location information for TARGET PHONE 1 for the times approximate to the thefts reported on May 20, 2022. Review of those records revealed that:

    a.    at 00:02 AM and 00:03 AM on May 20, 2022, TARGET PHONE 1 used cell sites located in Walpole, Massachusetts.

    b.    at 00:06 AM, 00:11 AM, 00:18 AM, 00:46 AM, 00:52 AM, 1:03 AM, 1:18 AM, 1:33 AM, 1:48 AM, and 2:03 AM, TARGET PHONE 1 used cell sites located in Norwood, Massachusetts.

    c.    This cell site activity is consistent with DAVILA committing the thefts on May 20, 2022.

### B.    09/01/22: THEFT OF CATALYTIC CONVERTERS FROM HINGHAM, NORWELL, & ROCKLAND, MA

34.     Investigators received an email from Hingham Detective Scott Tracey regarding overnight catalytic converter thefts taking place on or about September 1, 2022.  Det. Tracey provided images of a vehicle suspected in the thefts from Hingham. In the image, the operator can be observed wearing a black mask, a black jacket, and black sneakers.  A second individual can be observed emerging from the passenger seat wearing a black hooded sweatshirt.  The specific manner in which the theft occurred fits the modus operandi and the theft involved a maroon Acura MDX. Still images provided by Det. Tracey from the Rockland theft are attached below.





35.     West Bridgewater Sergeant Jon Craven contacted investigators and provided images from September 1, 2022.  These images show the maroon Acura MDX with New Hampshire registration V29396 attached traveling on Route 106 in West Bridgewater,

Massachusetts, on the same night of the Hingham, Norwell, and Rockland thefts described in the spreadsheet above.  Still images provided are attached below.





36.    Randolph Sergeant Marc Abramson contacted investigators regarding the maroon Acura MDX.  Sgt. Abramson related that the vehicle which he described as an Acura MDX was captured by a license plate reader on September 1, 2022, at 12:11 AM.  Sgt. Abramson related that Randolph had several catalytic converter thefts on September 1, 2022.  A still image provided showing the vehicle with New Hampshire V29396 is attached below.



Randolph MA PD-#05 - Union St at Center EB   42.15556610194999 , -71.0288609415402
9/1/2022 00:11:50 EDT

### 1.    09/01/22: FURTHER INVESTIGATION

37.    Investigators reviewed historical cell site location information for TARGET PHONE 1 for the times approximate to the thefts reported on September 1, 2022. Review of those records revealed that:

      a.  at 11:39 PM on August 31, 2022, TARGET PHONE 1 used a cell site located in Randolph, Massachusetts.

      b.  at 11:43 PM on August 31, 2022, and 2:22 AM on September 1, 2022, TARGET PHONE 1 used cell sites located in Norwell, Massachusetts.

      c.  at 1:27 AM on September 1, 2022, TARGET PHONE 1 used a cell site located in Hingham, Massachusetts.

      d.  at 2:43 AM, on September 1, 2022, TARGET PHONE 1 used a cell site located in Whitman, Massachusetts.

e.  at 3:15 AM, on September 1, 2022, TARGET PHONE 1 used a cell site located in East Bridgewater, Massachusetts.

f.  This cell site activity is consistent with DAVILA committing the thefts on September 1, 2022.

**C.    09/08/22: THEFT OF CATALYTIC CONVERTERS FROM CHELMSFORD, HAVERHILL, & LAWRENCE, MA**

38.    On Thursday September 8, 2022, Chelmsford, Haverhill, and Lawrence Police reported catalytic converter thefts conducted by a maroon Acura MDX.

a.  Home Care Specialists located at 63 Neck Road in Haverhill (two (2) catalytic converters).

b.  Charm Sciences Incorporated located at 659 Andover Street in Lawrence (two (2) catalytic converters).

c.  Assurance Technology located at 303 Littleton Road in Chelmsford (at least one (1) catalytic converter).

39.    On Thursday September 8, 2022, Haverhill Detective Rick Welch and Chelmsford Patrol Officer Steven Buckley contacted investigators regarding the catalytic converter thefts. The specific manner in which the theft occurred fits the modus operandi and the theft involved a maroon Acura MDX. Still images provided showing the suspects utilizing the maroon Acura MDX to follow:



Chelmsford                                      Haverhill

40.    On Thursday September 8, 2022, Lawrence Police Officer Maciel Sandoval responded to Charm Sciences Incorporated located at 659 Andover Street for a report of two (2)

catalytic converter thefts stolen from a box truck.  The following narrative was written by Officer Sandoval regarding the thefts in Lawrence.

> a.  On Thursday September 8, 2022, I, Officer Sandoval was working in the Patrol Division from 9AM-5PM assigned to cruiser #479.  At approximately 1207 hrs I was dispatched to 659 Andover St, Charm Sciences Inc, for a report of a past larceny.  Call notes stated that two catalytic converters were stolen from a box work truck, cameras on property.

> b.  Once on scene, I spoke to the reporting party who identified himself as Gerald Peake (company lawyer).  Mr. Peake reports the following; yesterday afternoon 09/07/22 at about 5:30 PM the box work truck was parked in the fenced lot for the night.  This morning at about 10:15 AM, one of the employees went to start the truck and it made an extremely loud noise.  This employee checked under the truck to investigate the noise and discovered that two catalytic converters had been taken (pictures attached).  The truck registered to Charm Sciences Inc is bearing MA Commercial T40899 a 2016 ISU NPR color white.

> c.  On Friday, September 9, 2022, at about 10:15AM I contacted Mr. Peake who provided the following update.  The security team was able to capture footage of the incident which shows a maroon-colored Acura possible MDX drive into the lot.  It circles a few times before parking right beside the box truck and an individual is seen going under the truck.

41.    Detective Mejia of Lawrence Police provided images from Thursday September 8, 2022, showing the maroon Acura MDX with New Hampshire Veterans plate V29396 attached. The make and model of the vehicle and the New Hampshire registration match the vehicle pursued by Woburn Police on September 20, 2022.  Additionally, an individual can be observed in the front passenger seat. Still images provided showing the maroon Acura MDX in Lawrence on the night of the thefts to follow:



Lawrence MA PD-#03 Broadway Bridge NB    42.70251172441311 , -71.16624408788232
9/8/2022 02:02:29 EDT



1.      **09/08/22: FURTHER INVESTIGATION**

42.     Investigators reviewed historical cell site location information for TARGET PHONE 1 for the times approximate to the thefts reported on September 8, 2022.  Review of those records revealed that:

     a.  at 8:25 PM, and 11:24 PM on September 7, 2022, and 00:43 AM and 00:50 AM on September 8, 2022, TARGET PHONE 1 used cell sites located in Methuen, Massachusetts.

     b.  At 1:27 AM, 2:24 AM, and 3:14 AM on September 8, 2022, TARGET PHONE 1 used cell sites located in Haverhill, Massachusetts.

     c.  This cell site activity is consistent with DAVILA committing the thefts on September 8, 2022.

43.     Investigators obtained records and video footage from Home Depot. Review of those records revealed that on September 5, 2022, at 9:31 PM, DAVILA purchased thirty (30) 9-inch Diablo Sawzall blades ("Diablo 9" 8/10 TPI BI-M THK MTL 15PK"), for a total of $95.94 at a Home Depot located in Westfield, Massachusetts. DAVILA utilized self-checkout and paid $100 in cash. After the purchase, surveillance video showed that DAVILA exited the store and entered a maroon Acura MDX and departed. A still image showing DAVILA exiting the Home Depot and the maroon Acura MDX follows:

 

**D.     09/15/22: THEFT OF CATALYTIC CONVERTERS FROM BELLINGHAM, MA, FRANKLIN, MA, HUDSON, MA**

**1.     09/15/22: THEFT OF CATALYTIC CONVERTERS FROM BELLINGHAM, MA**

44.     On Thursday September 15, 2022, Bellingham Police responded the theft of three

(3) catalytic converters from Greenscape Incorporated located at 6 Mill Street in Bellingham,

Massachusetts.  The following narrative was written by Bellingham Officer Timothy Joyce.

> a.  On 09/15/22 while on patrol as a police officer in the Town of Bellingham, I
> was dispatched to the area of #6 Mill St. Greenscape Inc. for the report of
> catalytic converter theft from two vehicles.  Upon arrival, I spoke to the
> Manager of Greenscape Inc identified as Conley, Steven.  Mr. Conley stated
> that he discovered two of his work vehicles had the catalytic converter
> removed sometime overnight.  He showed me the two vehicles, first MA-
> Commercial (T12273) and the second MA-Commercial (T74430) both
> vehicles were parked in the rear lot of the business during the theft.  Mr.
> Conley also showed me a large hole cut through the chain link fence to the
> right of the main gate.  Mr. Conley stated that the business does not have
> CCTV.  I then noticed outside security cameras on the neighboring building
> Ultimate Chimney Sweep.  I spoke to the Manager of Ultimate Chimney
> Sweep who provided me with overnight video of the front of the building and
> Mill St.

> b.  I reviewed the video and was able to find 4 times vehicles passed the building
> between 22:00 and 00:15 AM  I was able to eliminate 3 of the times from the
> video leaving the one recording as the suspect vehicle. At 00:41AM a dark
> colored SUV is seen slowing in front of Greenscape Inc. and entering the
> parking lot of Northeast Electrical Services.  The vehicle remains out of view
> of the camera until 01:12AM when it is seen leaving the area.  I spoke to an
> employee of Northeast Electrical Services who contacted the owner of the
> company.  He was able to review the camera footage from their building and
> observed a red/maroon colored SUV pull into the parking lot at 00:41AM and
> slowly pull behind the building.  I notified Detective Kirby and passed along
> my findings.  She stated that the vehicle sounds familiar to a recent suspect
> vehicle involved in catalytic converter thefts in the surrounding area.

45.     On Thursday September 15, 2022, investigators received an email from Bellingham

Detective Amy Kirby regarding the theft of three (3) catalytic converters overnight.  Det. Kirby

provided an update to the theft, and images from the theft from Mill Street and the side of the

building. The specific manner in which the theft occurred fits the modus operandi and the theft involved a maroon Acura MDX. Still images provided show the suspects utilizing the maroon Acura MDX follow:



### 2. 09/15/22: THEFT OF CATALYTIC CONVERTERS FROM FRANKLIN, MA

46.     On Thursday September 15, 2022, Franklin Police reported catalytic converter thefts from four (4) separate locations:

   a. Jancon Exteriors located at 20 Grove Street (at least two (2) catalytic converters).
   b. ACC Transport Incorporated located at 10 Kenwood Circle (at least one (1) catalytic converter).
   c. Reardon HVAC Corporation located at 837 Upper Union Street #C15 (at least one (1) catalytic converter).
   d. Target Solutions located at 165 Grove Street (at least one (1) catalytic converter).

47.     On Thursday September 15, 2022, Franklin Police Officer David Ricci responded to Jancon Exteriors located at 20 Grove Street for a report of a catalytic converter theft. The specific manner in which the theft occurred fits the modus operandi and the theft involved a maroon Acura MDX. The following narrative was written by Officer Ricci regarding the theft in Franklin.

   a. *On Thursday, September 15, 2022, at approximately 0700 hours, I, Officer Ricci responded to 20 Grove Street (Jancon Exteriors) for reports of a catalytic converter theft. Upon arrival I was met by Jeff Swahn, the company*

president. Swahn informed me that the catalytic converters were removed from two Ford Ecoline E450s. One bearing Massachusetts Commercial Registration R16454 the second bearing Massachusetts Commercial Registration R66600. There were numerous cameras affixed the property with the ability to view the incident.

b.  Upon review of the cameras, I observed a newer model Maroon Acura SUV pull onto the property at approximately 0119 hours. The vehicle can be observed pulling past the cameras affixed to Jancon out of the area of view. The vehicle can then be seen pulling past the cameras affixed to Chimney Services and then reversing in the direction of Jancon. The vehicle then pulls into a space in front of Jancon and then turns around in order to face the property exit. It is clear in the video that there is no front registration affixed to the vehicle. The vehicle is then turned off and one male wearing all black exits the passenger side walking towards the rear of the property. Shortly after another male wearing dark clothing and white shoes carrying a large red or orange item (believed to be a Sawzall) exits the driver's side of the vehicle. Upon review of the video the two can be heard speaking what sounds to be Spanish and then the sound of cutting can be heard. The males return to the vehicle with a large item in hand, believed to be a catalytic converter. Another male wearing a light grey hooded sweatshirt then exits the vehicle and walks out of view of the camera in the direction of Grove Street. Audible cutting can then be heard on the video stream. At approximately 0125 hours the vehicle can be observed leaving in the direction of Grove Street.

c.  Upon my initial investigation there was no tangible evidence left behind such as Sawzall blades. The Registration plate could not be clearly viewed in the provided video (All video has been attached). The three males appeared to be wearing masks; however, the male in the light grey hooded sweatshirt appeared to have tan or olive colored skin. The cameras affixed to Chimney Services were reviewed and only recorded the Maroon Acura pulling past and reversing. There were additional cameras affixed to the rear right corner of the building belonging to Workhorse Property Management. I contacted the owner, identified as Bryan Trundley and he informed me that he will review the footage and provide it to me. There was a camera affixed to the front of the building facing Grove Street, but Swahn informed me it is inoperable. There did not appear to be any other cameras in the area with the ability to view the two vehicles.

48.    On Tuesday September 27, 2022, investigators received an e-mail from Franklin Detective Cody Landry regarding the catalytic converter thefts on Thursday September 15, 2022. Detective Landry related that surveillance video shows the maroon Acura MDX being used at two

of the theft locations.  Still images provided by Det. Landry showing the suspects utilizing a maroon Acura MDX follow:



### 3.      09/15/22: THEFT OF CATALYTIC CONVERTERS FROM HUDSON, MA

49.     On Thursday September 15, 2002, Hudson Police reported catalytic converter thefts at three (3) separate locations:

> a.   Holiday Inn Express located at 121 Coolidge Street (one (1) catalytic converter).
> b.   A-1 Foundation Crack Repair, Incorporated located at 282 Central Street (at least three (3) catalytic converters).
> c.   Vision Solar located at 12 Kane Industrial Drive (at least two (2) catalytic converters).

50.     On Thursday September 15, 2022, Hudson Detective Sergeant Robert Merrill was informed of the catalytic converter thefts occurring overnight and began his investigation.  The specific manner in which the theft occurred fits the modus operandi and the thefts involved a maroon Acura. The following narrative was written by Detective Sergeant Merrill regarding the thefts in Hudson.

> a.   *I went to the Holiday Inn on 9/15 and spoke with manager Bob Patidar.  Bob later sent me video and photos of vehicles that were in the lot around the time of the theft.  Around 4:29 AM there was a vehicle parked in the lot next door that was near the truck but then came into the lot and stopped in front of the Holiday Inn, it did not appear this vehicle was involved.  Bob later located photos at approximately 3:57 AM of a small SUV entering and driving through the lot.  It should be noted that I receive emails from MaCrimeNet who have been reporting a maroon Acura SUV with roof racks and silver/chrome running boards as the suspects in thefts of catalytic converters*

33

in 25-30 communities.  The photos that Bob sent me of the SUV pulling into the lot and driving through, appear to be the same SUV.

b.  I also went to Temescal Wellness, which is located across the street from the Holiday Inn.  Manager Jarrod Lanier provided video which shows a vehicle that appears to pull up to the passenger side of the truck where the catalytic converter was stolen, with its lights out.  A person comes out of the Holiday Inn, possibly witness Colen.  The vehicle then leaves the lot and puts its lights while traveling and taking a left onto Coolidge St.

c.  I spoke with witness Colen Fencer who reported the incident to hotel staff.  Colen was inside the Holiday Inn and reported that he heard cutting around 3:50 AM, and he went outside.  He stated when he was outside, he observed a white male at the front of the truck where the catalytic converter was stolen.  He reported the male to be short, 5'8' or 5'9', and he was wearing a ski mask.  Colen reported he could hear someone else cutting but he didn't see the other person.  He stated that the male was then out of sight and then a vehicle left the lot, which he described as a full-size Ford truck.

d.  Detective Vezeau compiled photos and videos from this incident and the other incidents on 9/15.  In the videos the maroon Acura SUV is shown and appear to be involved with the thefts.

51.    On Thursday September 15, 2022, investigators received an e-mail from Hudson Detective Sergeant Merrill regarding the overnight catalytic converter thefts.  This e-mail contained images obtained from Kane Industrial Park showing the MAROON ACURA MDX in the area of the thefts.  One suspect is viewed exiting the MAROON ACURA MDX with red gloves and mask, which is similar to several other thefts.  Still images provided showing the suspects utilizing the MAROON ACURA MDX to follow.



**4.      09/15/22: FURTHER INVESTIGATION**

52.     Investigators reviewed historical cell site location information for TARGET

PHONE 1 for the times approximate to the thefts reported on September 15, 2022.  Review of

those records revealed that:

> a.  at 8:20 PM, 8:40 PM, and 10:27 PM on September 14, 2022, and 00:12 AM
>     on September 15, 2022, TARGET PHONE 1 used cell sites located in
>     Bellingham and Franklin Massachusetts.
>
> b.  This cell site activity is consistent with DAVILA committing the thefts on
>     September 15, 2022.

53.     Investigators obtained records and video footage from Home Depot.  Review of

those records revealed that on September 14, 2022, at 5:58 PM, DAVILA purchased thirty (30) 9-

inch Diablo Sawzall blades (""Diablo 9" 8/10 TPI BI-M THK MTL 15PK"), and "Large red nitrile

level 3 cut resistant" gloves for a total of $117.84 at a Home Depot located in Westfield,

Massachusetts. DAVILA utilized self-checkout and paid $120 in cash. After the purchase,

surveillance video showed that DAVILA exited the store and entered a maroon Acura MDX and

departed. A still image showing DAVILA exiting the Home Depot and the maroon Acura MDX

follows:



54.     Of note, during this transaction DAVILA wore a black Adidas hat that appears identical to the hat worn by "Suspect 1" in the December 5, 2022, incident described below. Additionally, the large red nitrile level 3 cut resistant gloves appear identical to the red gloves worn by the suspect in the surveillance video from the Hudson incident above.  An image of the gloves purchased by DAVILA during the September 14, 2022, transaction follows:



### E.     09/20/22: THEFT OF CATALYTIC CONVERTERS FROM SUDBURY, MA & MOTOR VEHICLE PURSUIT IN WOBURN, MA

55.     On Tuesday September 20, 2022, Trooper Melberg was contacted by Woburn Police regarding a motor vehicle pursuit initiated by Woburn Police Officer Kevin W. Maher.  The

vehicle pursuit took place following a check of an industrial park due to increased catalytic converter thefts in the region, conducted by a maroon Acura MDX.  The following narrative was written by Officer Maher regarding the pursuit in Woburn.

    a.    *I, Officer K. Maher, have the following to report while working the "C-Shift" (2330-0730 hours) on Monday September 19, 2022, in marked patrol unit #745: At approximately 0135 while on routine patrol I was checking the area of Cabot Road due to the increased catalytic converter thefts that have been going on throughout the state. It is known the parties involved typically remove the catalytic converters from box trucks in the middle of the night and have been using the same vehicle, a maroon Acura SUV, but have been attaching plates from other vehicles to it. As I drove down towards Peak Event Services, I was about to pull my cruiser around a row a box trucks when I noticed a dark colored SUV pull out from behind the rear of the building with no headlights on. I could tell it was occupied by two parties but was unable to get any description of the occupants. I thought for a moment it might be workers, as employees typically work at Peak Event Services late into the night. However, after I pulled out from around the box trucks the dark colored SUV turned its headlights on and started to drive towards the exit to Cabot Rd.*

    b.    *I pulled up behind the SUV and noticed it was indeed a maroon Acura SUV. The vehicle pulled ahead of me a little and I was trying to get a look at the license plate. Due to the dark area, we were located it was tough to see what state the plate was but I was able to determine the plate was white with blue lettering, V29396. I ran the plate as a MA registration, and it came back to a different vehicle. As we turned onto Commerce Way from Cabot Rd, I activated my cruiser lights in an attempt to stop the vehicle. The vehicle then sped off at a high rate of speed going through the intersection to Market Basket and then through a red light at the intersection of Commerce Way and Mishawum Rd. The vehicle then sped up the on ramp to 95 south and it was then I determined due to the wet road surface and rain to not pursue the vehicle. I radioed into dispatch the information I had and the last known direction of travel. Dispatch then put a BOLO out to surrounding cities and towns as well as Massachusetts State Police. After a brief discussion it was determined the plate on the vehicle was possibly a NH Veterans plate and after I reviewed some pictures online it appeared to look similar.*

    c.    *Unfortunately, the vehicle was able to get away and was unable to be located by any surrounding city or town nor by the Massachusetts State Police. I drove back down Cabot Rd to Peak Event Services to check the area, but I was unable to determine if anything had been stolen or even looked out of place at the time. It was determined to wait until the morning*

> *to see if the business called to report any thefts of catalytic converters.*
> *Only one business called in the early morning hours around 0650 hours to*
> *report a catalytic converter theft and they were located further down*
> *Commerce Way at #100 (See report 22-1650-OF). Nothing further to*
> *report at this time.*

56.     The registration plate attached to the maroon Acura MDX was identified following this pursuit as New Hampshire Veteran's registration V29396.  A database query revealed this plate expired on October 31, 2018, and that it was last registered to Richard Walter Jones (dob xx/xx/1955) of 98 Westchester Way, Manchester, New Hampshire. According to a review of records, investigators determined that the vehicle the plate was last legally attached to was a silver 2003 Ford Focus.

57.     On Wednesday October 5, 2022, Sudbury Detective Lieutenant Wayne M. Shurling contacted investigators regarding a report of a theft of catalytic converters from Sudbury, Massachusetts.  According to D.Lt. Shurling, a check of surveillance video following the incident revealed a maroon Acura MDX had committed the thefts on September 20, 2022, at 04:30 AM. This time was a few hours after the Woburn pursuit identifying the MAROON ACURA MDX, and its New Hampshire Veteran's registration.  The specific manner in which the theft occurred fits the modus operandi and the theft involved a maroon Acura MDX. The following narrative was written by Sudbury Officer Etan Karol.

> a.   *On 10/4/2022, at approximately 1154 hours, I, Officer Karol was assigned to*
> *routine West patrol when I was dispatched to 490 Boston Post Rd. (Pure*
> *Encapsulations- a recent acquisition of the Nestle Corporation) reporting*
> *theft of a motor vehicle catalytic converter.*

> b.   *Ms. Danielle Pelletier (Director of Operations for Pure Encapsulations) (MA,*
> *DOB xx/xx/1979, 18 Whalen Rd., Hopkinton, MA 01748, 508-414-3590)*
> *reports that the catalytic convertor was from MA CON registration T66174*
> *(2018 white Isuzu box truck) was stolen. Pelletier is uncertain when the theft*
> *occurred because the vehicle has been sitting idle for approximately the past*
> *three (3) weeks. The converter was likely removed using a power tool such as*
> *a band saw because the cut lines are relatively straight and smooth. There*

*was not observable evidence left at the scene. Pelletier reports that there is video surveillance and technicians are reviewing the footage to determine a time/date of the theft, and any additional information such as a vehicle registration or the identity of the suspect.*

58.     Sudbury Det. Lieutenant Shurling provided the still images of the theft:



59.     Investigators reviewed historical cell site location information for TARGET PHONE 1 for the times approximate to the activity reported on September 20, 2022 in Sudbury. Review of those records revealed that:

      a.     at 9:15 PM, and 9:45 PM on September 19, 2022, TARGET PHONE 1 used a cell site located in Sudbury, Massachusetts; and

      b.     at 8:07 PM on September 19, 2022, and 3:49 AM on September 20, 2022, TARGET PHONE 1 used a cell site located in Acton, Massachusetts.

      c.     This cell site activity is consistent with DAVILA committing the thefts on September 20, 2022.

60.     Investigators obtained records and video footage from Home Depot related to cash purchases of Sawzall blades. Review of those records revealed that on September 17, 2022, at 6:13 PM, DAVILA purchased twenty-five (25) 9-inch Diablo Sawzall blades for $93.40 at a Home Depot located in Westfield, Massachusetts. DAVILA utilized self-checkout and paid $100 in cash. A still image showing DAVILA exiting the Home Depot follows:



## F.    10/02/22: THEFT OF CATALYTIC CONVERTERS FROM IPSWICH, MA AND BILLERICA

61.    On Sunday, October 2, 2022, a theft of twenty (20) catalytic converters was committed at Vinwood Caterers located at 3 Union Street and Ebsco Industries located at 10 Estes Street in Ipswich, Massachusetts. Trooper Melberg spoke with Ipswich Detective Edward Gallivan regarding this theft.  Det. Gallivan described how the theft occurred and provided the specifics of the incident.  Det. Gallivan also provided images obtained from the Ebsco security camera system which reveals a maroon Acura MDX and two suspects committing the thefts.   The following narrative was written by Det. Gallivan regarding the thefts in Ipswich.

> a.   *On Sunday October 2, 2022, I was requested to conduct a follow up investigation to a report of catalytic converter thefts which had occurred during the midnight to eight AM shift. Upon my arrival I was met by Ptl. R Mayer who informed me that 9 catalytic converters had be removed from the underside of the Vinwood catering trucks, and a 10th truck Ptl. R Mayer had located on the Ebsco property behind a fence. I spoke with the manager Tom Lang of Vinwood, who stated that their last truck parked on Saturday October 1, 2022, around 11 PM after returning from a catering job. Lang reported that his employees arrived at work around 6 AM to start the day and uncovered the theft's, a Fabio Lauer Klein reported the thefts to the police at 7:10 AM. I documented the scene with photographs and a sketch. Ptl. Mayer then showed me the truck he had discovered on Estes Street loading dock. I observed a lock on the ground and found that the truck had two catalytic converters taken in a similar manor as the trucks belonging to Vinewood. The lock was secured and processed as evidence by me.*

> b.   *Later in the day I was joined by Kevis Reid who is the project manager for Ebsco. Reid was able to access the Ebsco security camera system. At approximately 4:13 AM a maroon SUV pulls up and stops on Union Street*

*near Vinwood. Two male parties exit the vehicle, on party stood in the street in what appears to be a lookout position, while the second goes under a Vinwood truck, with what appears to be a Sawzall type tool equipped with a flashlight. The second party then hands the catalytic converter off the first person, and then goes to the passenger side of the truck and removes the second catalytic converter. The maroon SUV is tracked through the neighborhood via Ebsco surveillance cameras and at approximately 4:16 AM the maroon SUV is seen pulling up to a fence on Estes Street. A short time later a person is seen next to a parked truck on the Ebsco property. On the driver's side of the parked truck, a light is visible and appears to disappear under the truck. A person appears at the rear drive side door of the maroon SUV, which then drives away. All video provided by Ebsco has been reviewed and investigators were unable to obtain a license plate or a description of the suspects.*

    c.   *On Sunday I emailed still photos of the maroon SUV to Massachusetts Crime Network (Mass Crime Net). I received numerous emails, and phone calls about the maroon SUV. The maroon SUV was identified as being an Acura MDX. This Acura has been involved in catalytic converter thefts throughout the Commonwealth of Massachusetts. Further when law enforcement attempts to stop this Acura the drivers refuse to stop, and a pursuit ensues. Law enforcement has failed to identify the occupants of the Acura*

62.    Det. Gallivan provided images from the surveillance video that depict the suspects committing the thefts.  The images show two suspects utilizing the maroon Acura MDX, targeting commercial box trucks, and utilizing a Sawzall to remove the vehicles catalytic converters.  The specific manner in which the theft occurred fits the modus operandi and the theft involved a maroon Acura MDX.

63.    On Monday, October 3, 2022, Billerica Police responded to three (3) separate business locations for reports of catalytic converter thefts from Isuzu NPR commercial box trucks. It is notable that the Isuzu NPR truck have two catalytic converters on each vehicle. As such, the targeting of Isuzu NPR trucks revealing planning, insight, and research as to the value that can be stolen from a single Isuzu NPR truck.

    a.    Sunrun Solar located at 16 Progress Road, Billerica (at least eight (8) catalytic converters).

    b.      American Automotive Aftermarket located 50 Dunham Road, Billerica (two (2) catalytic converters).

    c.      Boscho Incorporated located at 6 Dunham Road, Billerica (one (1) catalytic converter).

64.    On Monday October 3, 2022, Billerica Officer Paul Ware responded to the thefts at Boshco Incorporated and Sunrun Solar.  The specific manner in which the theft occurred fits the modus operandi and the theft involved a maroon Acura MDX. The following narrative was written by Officer Ware regarding the thefts in Billerica.

    a.      *On Monday, October 3, 2022, at 0708hrs, I responded to 6 Dunham Road Suite K to the business Boshco, Inc. for the report of a stolen catalytic converter from a company work truck. It should be noted that prior to this call, I was on scene with another catalytic converter theft in the same industrial park. I was able to obtain surveillance video from business neighbor Reid Electric which was attached to the other media section of this report. Below is a summary of my investigation with the reporting party who identified himself as the shop supervisor Garry Battcock.*

    b.      *Upon arrival, I met with Garry who told me he immediately noticed the catalytic converter missing from the company box truck when he pulled up to work this morning at approximately 0700hrs. At this point a call was made to the Billerica Police. Garry told me the last time he saw the company box truck without issue was on Friday September 30th at approximately 1300hrs.*

    c.      *Garry then took me out to the 2022, white, Isuzu NPR, bearing MA Com (W27041). I observed two clean cuts and a missing item where the catalytic converter should be. I also observed a small amount of red paint just before the missing item that appeared to come from a Sawzall. I informed Garry that Billerica PD detectives would be coming by for a follow up to which he understood.*

    d.      *Garry called me a short time later notifying me that a surveillance video caught the above incident. In the video you can clearly see that on October 2nd,2022 at 01hrs 01 minutes and 48 seconds, a maroon what appears to be an Acura pulls up into the parking lot with its exterior lights off. It drives past the building and into the backlot. A party can then be seen coming from where the box truck is with a small light illuminating from the hand of this persons. The Acura then backs up from behind the building and pulls up next to the box truck. At this time the suspect can be seen coming from underneath the box truck and putting an item in the rear of the Acura.*

65.     Billerica Detective Timothy McKenna provided stills/photos from the surveillance video.  The images show the suspects utilizing the maroon Acura MDX in the targeting the commercial box trucks. Still images provided show the suspects utilizing the maroon Acura MDX follow:



66.     Investigators reviewed historical cell site location information for TARGET PHONE 1 for the times approximate to the thefts reported on October 2, 2022.  Review of those records revealed that:

      a.  at 11:58 PM on October 1, 2022, TARGET PHONE 1 used a cell site located in Burlington, Massachusetts; and

      b.  at 2:58 AM on October 2, 2022, TARGET PHONE 1 used a cell site located in North Reading, Massachusetts.

      c.  This cell site activity is consistent with DAVILA committing the thefts on October 2, 2022.

## G.     11/24/22: THEFT OF CATALYTIC CONVERTERS FROM HOOKSETT, NH

67.     Investigators were contacted by Hooksett, New Hampshire Officer Trevor Dearden concerning a theft of catalytic converters reported on Thursday November 24, 2022, from Soil Away located at 5 Eastpoint Drive in Hooksett, New Hampshire.  Officer Dearden provided the still images from surveillance video.  The vehicle used in the theft appears to be an exact match to the MAROON ACURA MDX.  Officer Dearden provided the attached still images below:





68.     On December 16, 2022, investigators received police reports from Hooksett, NH police indicating that at least 12 additional vehicles were victim to catalytic converter thefts on or about November 24, 2022. This theft occurred at Bimbo Bakeries located at 3 Eastpoint Drive in Hooksett, NH.  Of note this business is located in direct proximity of the above theft at Soil Away, and Bimbo Bakeries has been targeted for catalytic converter thefts by the MAROON ACURA MDX at their other locations in Millbury and Wilmington.  The report stated that on November 26, 2022, Hooksett Police were dispatched to Bimbo Bakeries for a report of possible evidence found.  This evidence consisted of a "red painted Sawzall blade with damage to its finish, indicating it had been used".  This blade was located between two (2) delivery trucks in the lot. An open-source search of the code on the Sawzall blade found in Hooksett produced a "Diablo nine-inch 8/10 TPI bi-metal Diablo Sawzall blade."  Receipts provided by Home Depot during

transactions show that DAVILA purchases "Diablo 9" 8/10 TPI BI-M THK MTL 15PK".  An image of the blade found in Hooksett, and a stock image of the Diablo blade follow:



| Image of Sawzall blade recovered from Hooksett, NH | Stock image of "Diablo 9" 8/10 TPI BI-M THK MTL 15PK" |

69.     Investigators reviewed historical cell site location information for TARGET PHONE 1 for the dates and times approximate to the thefts reported on November 24, 2022. Review of those records revealed that:

      a.  at 7:08 PM on November 23, 2022, TARGET PHONE 1 used a cell site located in Hooksett, New Hampshire.

      b.  This cell site activity is consistent with DAVILA committing the thefts on November 23, 2022.

## H.     11/27/22: THEFT OF CATALYTIC CONVERTERS FROM MILLBURY, MA AND WILMINGTON, MA

70.     Investigators were made aware of overnight catalytic converter thefts by a maroon Acura MDX matching SUBJECT VEHICLE 1 taking place in Millbury, Massachusetts, and Wilmington, Massachusetts on or about November 27, 2022.

### 1.     11/27/22: THEFT OF CATALYTIC CONVERTERS FROM WILMINGTON, MA

71.     On Monday November 28, 2022, investigators received reports of multiple catalytic converter thefts from Wilmington Detective Julie Pozzi.   The following narrative written by Wilmington Officer Jonathan Morales is as follows:

a.     *On Sunday, November 27, 2022, I, Officer Morales, was assigned to uniformed patrol sector 2, marked cruiser 34 on the 12 AM – 8 AM shift. At approximately 7:43 AM, I was notified by Sergeant Wandell to respond to 234 Ballardvale Street (Bimbo Bakeries). Upon arrival, Sergeant Wandell informed me that he discovered multiple catalytic converters missing out of several trucks. Sergeant Wandell and I informed dispatch of the registration numbers. Sergeant Wandell and I discovered a total of 8 trucks that had the catalytic converters cut out. I observed a red residue around the exhaust pipes that appeared to have been from the cutting device. It is known that Bimbo Bakeries does not own all of the trucks on the property. Due to hiring sub-contractors. The 8 trucks that had catalytic converters cut out, belong to multiple owners (See Report). At this time, the company's/individual owners have yet to report this theft but will be notified that a report has been filed when they do so.*

72.     Detective Pozzi also provided a follow up to the initial report written by Wilmington Officer Michael Dilorenz.  The report by Officer Dilorenz is as follows:

a.     *On Sunday November 27, 2022, at approximately 1942 hours, I responded to 234 Ballardvale Street (Bimbo Bakeries) for a follow up investigation to catalytic converters being stolen off their property earlier in the day. I spoke with on site manager Joseph Deluise, and informed him of the overnight thefts of catalytic converters. Mr. Deluise was able to show me that the business has camera's that face the location where the catalytic converters were taken. Mr. Deluise provided me with his managers information who would be able to pull up the video footage.*

b.     *I returned to the station and contacted Michael Shea via phone, and he informed me that upon viewing the video footage of the lot you see the suspect vehicle enter the lot at 0157 hours and depart at 0230 hours. Footage shows what appears to be a dark colored Acura MDX SUV occupied by 2 males dressed in all black with their faces covered. Mr. Shea was unable to send me the video footage via email but did send screen shots of the vehicle in question.*

c.     *It should be noted that at 0226 hours Officer Morales observed a dark colored Chevrolet Suburban parked on the side of the road with its headlights off in the area of 220 Ballardvale Street. Where this vehicle was parked allows the occupants to have a clear view of the entrance to 230/240 Ballardvale Street. Officer Morales checked on the vehicle and was able to identify the operator as*

*Efrain Villanueva (DOB: xx/xx/1990, S22139987) of West Springfield Massachusetts. It is believed that this individual may have been a lookout. Mr. Villanueva stated to Officer Morales that he got into a fight with his girlfriend in west Springfield and was driving around to "blow off steam".*

d.     *I contacted Detective Pozzi via phone and informed her of this new development and she asked that I send this information to MA Crime Net for an areawide distribution. Mr. Shea stated that he would upload the video footage to a USB flash drive and have it for the police department on Monday (11/28/22).*

73.     Detective Pozzi provided a Wilmington Police internal activity log associated with Officer Morales' interaction with the BLACK 2015 SUBURBAN operated by Efrain VILLANUEVA.  This activity log shows Officer Morales arriving at 02:26 AM and clearing at 02:43 AM. In this activity log, it is noted that the vehicle registration for the BLACK 2015 SUBURBAN is Massachusetts 5AVY49, registered to Rafael Davila (believed to be DAVILA's father). According to information received from Wilmington Police, during the encounter with VILLANUEVA, VILLANUEVA was holding a cellular phone in his hand and had an air pod inserted into his ear. An analysis of communication between TARGET PHONE 1 and the 413-317-0106 Phone utilized by DAVILA reveals the following calls made before, during, and after this encounter between Officer Morales and VILLANUEVA.

| Date/Time | I/O | Called | Called From | Type | Subscriber/User | Duration |
|-----------|-----|--------|-------------|------|-----------------|----------|
| 11/27/2022 00:41 | I | 413-317-0106 | 413-355-6609 | Voice | *Rafael Davila* | 16 |
| 11/27/2022 02:35 | I | 413-317-0106 | 413-355-6609 | Voice | *Rafael Davila* | 190 |
| 11/27/2022 02:59 | I | 413-317-0106 | 413-355-6609 | Voice | *Rafael Davila* | 75 |
| 11/27/2022 03:01 | I | 413-317-0106 | 413-355-6609 | Voice | *Rafael Davila* | 0 |
| 11/27/2022 04:37 | O | 413-204-9377 | 413-317-0106 | Voice | | 4 |
| 11/27/2022 04:44 | O | 413-355-6609 | 413-317-0106 | Voice | *Rafael Davila* | 446 |

74.     Detective Pozzi provided still images of the Acura MDX from the catalytic converter theft at 234 Ballardvale Street below.



## 2.    11/27/22: THEFT OF CATALYTIC CONVERTERS FROM MILLBURY, MA

75.    Investigators spoke with Millbury Detective Andrea Warpula who related that they had received reports that a maroon Acura SUV was involved in catalytic converter thefts from three vehicles parked at Bimbo Bakeries located at #10 Latti Farm Road in Millbury on Sunday November 27, 2022, at 05:35 AM. Millbury Police reported that the thieves were interrupted by an employee and that a fourth vehicle was in the process of being cut when the thieves were interrupted.  The fourth vehicle was observed to still have its catalytic converter intact and a 9-inch Diablo Sawzall blade embedded in the pipe. Stills of the maroon Acura MDX involved in the theft were provided by Det. Warpula and follow:

 

76.     Of note, Millbury Police recovered a Sawzall blade from the piping of the vehicle. That Sawzall blade was a 9-inch Diablo blade consistent with the blades contained in the ""Diablo 9" 8/10 TPI BI-M THK MTL 15PK" item purchased at Home Depot by DAVILA.  Photographs of the blade embedded in the pipe follows:

 

### 3.     11/27/22: FURTHER INVESTIGATION

77.     Investigators reviewed historical cell site location information for TARGET PHONE 1 for the times approximate to the thefts reported on November 27, 2022.  Review of those records revealed that:

      a.   at 1:46 AM, and 2:38 AM on November 27, 2022, TARGET PHONE 1 used a
         cell site located in Wilmington, Massachusetts.

b. at 4:51 AM, on November 27, 2022, TARGET PHONE 1 used a cell site located in Waltham, Massachusetts.

c. at 7:46 AM, on November 27, 2022, TARGET PHONE 1 used a cell site located in Agawam, Massachusetts.

d. This cell site activity is consistent with DAVILA committing the thefts on November 27, 2022.

## IV.     MASSACHUSETTS STATE POLICE INVESTIGATION

## A.     E-BAY RECORDS

78.     On Friday October 21, 2022, investigators utilized open-source investigation tools and located a New Hampshire Veterans Registration plate bearing V29396 for sale on eBay.com. This plate listed on eBay matched the registration plate utilized by the maroon Acura MDX while engaged in catalytic converter thefts, and a pursuit by Woburn Police.  An image of the attached eBay posting is attached below.  It is of note that the plate does not appear to be a replica as it has the accurate expiration sticker attached to the lower right-hand corner.  According to the publicly available information about the close of the eBay sale, this license plate was purchased within two (2) weeks of a motor vehicle pursuit by Norwood Police of a vehicle believed to be the MAROON ACURA MDX (Norwood 22-859-OF).  This pursuit occurred upon viewing the vehicle exit an area with recent catalytic converter thefts and matching the description of the target vehicle.



79.     Investigators reviewed the eBay records for the purchase of the New Hampshire Veteran's license plate V29396.  The registration information for the eBay purchaser of the New Hampshire Veteran's license plate V29396 was username "partcloud", listed to be Rafael DAVILA, DOB: xx/xx/1988, with a listed address of 163 Trafton Road in Springfield, Massachusetts 01108.  The records also indicated that DAVILA's eBay account was associated with a phone number of 413-355-6609 and email address of thepartcloud@gmail.com.  The e-Bay records also revealed that DAVILA had the New Hampshire Veterans plate V29396 shipped to 799 S West Street, Apt. #D in Feeding Hills, Massachusetts.  This address is also listed as his shipping address for purchases beginning on December 10, 2020.  Investigators also learned from review of records that on January 9, 2021, a "Ralphy Devila" used the address of 799 South West Street in Feeding Hills, Massachusetts in an insurance claim (ISO File Number: 4F005466997).

80.     In the eBay records, investigators further identified DAVILA as purchasing a "New Hampshire Passenger Motorcycle License Plate Lot Old Man On The Mountain" on August 12, 2022, a "Connecticut US USA License Plate Number Plate Embossed Custom Border" on October

26, 2022, and a "Custom Connecticut Aluminum Vanity License Plate Tag Personalized New" on October 24, 2022. As noted below, SUBJECT VEHICLE 1 was observed on video surveillance with Connecticut AX88253 attached to it during the thefts reported on December 6, 2022.

81.     Investigators     obtained     records     from     Google     via     subpoena     for "THEPARTCLOUD@GMAIL.COM".          Those          records          revealed          that THEPARTCLOUD@GMAIL.COM account was associated with an individual named "Rafael Davila" and a phone number of 413-355-6609.     The records also revealed that THEPARTCLOUD@GMAIL.COM account had the following services activated on the account: Gmail, Web & App Activity, Location History, Google Hangouts, YouTube, Google Voice, Google Calendar.  Access logs for THEPARTCLOUD@GMAIL.COM showed that the account was accessed on the following dates and times: 2022-11-02 05:32:06; 2022-10-15 01:10:22; 2022-10-05 02:41:35; 2022-09-12 21:42:35; 2022-08-30 19:50:25; 2022-08-24 22:09:31; 2022-08-20 02:02:43; 2022-08-05 22:00:44; 2022-07-27 18:53:27; 2022-07-14 18:38:30; 2022-06-24 16:19; 2022-06-19 01:38:48; 2022-06-19 01:38:23; 2022-06-03 04:35:54; 2022-05-29 19:23:04; 2022-04-20 00:25:16; 2022-04-20 00:25:16; 2022-04-05 23:48:48; 2022-04-05 23:48:48; 2022-04-05 04:14:56; 2022-04-05 04:14:56.

82.     On Wednesday November 16, 2022, investigators conducted surveillance on locations associated with DAVILA.  Upon reaching 799 S. West Street in Feeding Hills, Massachusetts, the MAROON ACURA MDX (SUBJECT VEHICLE 1) was located, and it appeared to be the exact vehicle utilized in the thefts described above. The MAROON ACURA MDX has the six identifying features that were discernible in the surveillance images described above.  The MAROON ACURA MDX was backed in and parked behind other vehicles outside of the driveway.  Due to the position of the vehicle, it was not possible to determine if the New

Hampshire Veteran's plate was still attached.  Still images of SUBJECT VEHICLE 1 taken on November 16, 2022, follow:



83.     On Thursday November 17, 2022, investigators conducted surveillance and observed the MAROON ACURA MDX parked at 799 S. West Street in Feeding Hills, MA. Next to the MAROON ACURA MDX was a Dodge Challenger. A photograph taken during surveillance of 799 S. West Street, Feeding Hills, MA, is attached below.



84.     It is of note that the MAROON ACURA MDX (SUBJECT VEHICLE 1) pictured in catalytic converter thefts and the one pictured at 799 S West Street in Feeding Hills share a number of unique identifiers. For example, the vehicles are both maroon, have six (6) spoke rims, chrome running boards, tinted windows, a split front grille, no front plate, and roof racks.

85.     On October 17, 2022, MSP Springfield and several local agencies were involved in the pursuit of a black Dodge Challenger bearing Massachusetts Registration Plate 1751B.  This plate is owned by 57 Auto LLC located at 371 South Westfield Street in Feeding Hills, Massachusetts.  Trooper Ferrera assigned to MSP Springfield contacted the owner of 57 Auto, an individual named Nicholas Dominic Battista.  Battista related that the registration plate was in the possession of "Ralph" and provided Ralph's phone number as 413-355-6609 (MSP report number 2022-0B3-007361).  Tpr. Ferrara stated that Battista informed him that he let "Ralph" use the plate, and that Ralph finds cars for him to sell at 57 Motors.  Battista could not provide Ralph's last name.  Tpr. Ferrara furthered stated that DAVILA called the barracks on 10/17/22, and that he returned the call to DAVILA using the number provided (413-355-6609).  DAVILA answered and related that he had left the plate behind while attempting to purchase a vehicle, and that he did not know the identity of the party who currently possessed it.

86.     Tpr. Ferrara also noted that despite DAVILA's claim that an unknown person was in possession of the plate at the time of the pursuit, he found it remarkable that the vehicle was located traveling just outside 57 Auto Sales following the pursuit, before once again fleeing and making good on his escape into Connecticut.  A check of DAVILA's shipping history provided by e-Bay shows that as of September 12, 2022, DAVILA's shipping address was listed to be 57 Auto Sales, 371 S Westfield Street, Feeding Hills, Massachusetts.

87.     While conducting surveillance of 799 S. West Street, Feeding Hills, MA, investigators also observed a black Dodge Challenger consistent with the vehicle described in the pursuit above.  Additionally, parked directly in front of the MAROON ACURA MDX was a Black 2015 Chevrolet Suburban bearing Massachusetts Registration 5AVY49 (the BLACK 2015 SUBURBAN or SUBJECT VEHICLE 2).  A query of Massachusetts RMV records revealed that SUBJECT VEHICLE 2 is registered to an individual named Rafael Davila (dob xx/xx/1969) who is believed to be the suspect Rafael DAVILA's father.  A photograph of the Dodge Challenger and BLACK 2015 SUBURBAN situated in the parking area of 799 S. West Street, Feeding Hills, Massachusetts, taken on Wednesday November 16, 2022, is attached below.



**B.      STATE GPS WARRANTS**

88.      On Wednesday November 23, 2022, investigators applied for and were granted a search warrant to install a GPS tracking device on the MAROON ACURA MDX located at 799 S West Feeding Hills, Massachusetts.  On Tuesday November 29, 2022, the GPS was installed on the MAROON ACURA MDX. The GPS tracking device and remains on SUBJECT VEHICLE 1 subject to a federal search warrant issued on December 16, 2022.  *See* 22-MJ-5448.

**C.      12/06/22: NEW HAMPSHIRE THEFTS:**

89.      On Tuesday December 6, 2022, investigators reviewed data received from the GPS tracking device attached to SUBJECT VEHICLE 1.  This data revealed that on December 5, 2022, at approximately 10:02 PM, SUBJECT VEHICLE 1 left 799 S. West Street in Feeding Hills, MA and traveled to multiple cities and towns in New Hampshire. Specifically, the GPS tracking data stated indicated that SUBJECT VEHICLE 1 stopped multiple times in the Concord, New Hampshire area.  In reviewing the data, investigators also observed SUBJECT VEHICLE 1 making multiple stops in industrial parks consistent with prior thefts.  Immediately following the

travel to New Hampshire, the GPS data showed SUBJECT VEHICLE 1 travelling back into Massachusetts and ultimately stopping at 799 S. West Street, Feeding Hills, Massachusetts. Investigators spoke with Concord, New Hampshire Detective Garrett Lemoine who advised that Concord had multiple catalytic thefts overnight during the time that SUBJECT VEHICLE 1 was there.

90.    During the early morning hours on December 6, 2022, Concord, New Hampshire Police Department reported fifteen (15) known vehicles whose catalytic converters were stolen overnight. More specifically, Concord, New Hampshire Detective Lemoine provided a list of vehicle identifier numbers (VIN), all of which were victims of catalytic converter theft. Below is a list of the make, model, and VIN numbers of the fifteen (15) vehicles provided by Detective Lemoine:

- 2020 Nissan NV200 – VIN: 3N6CM0KN0LK704672
- 2020 Nissan NV200 – VIN: 3N6CM0KN3MK694785
- 2020 Nissan NV200 – VIN: 3N6CM0KN9MK694676
- 2017 Nissan NV200 – VIN: 3N6CM0KN4HK693814
- 2008 Toyota Prius – VIN: JTDKB20U883318802
- 2018 Isuzu NPR – VIN: 54DC4W1C6JS809842
- 2015 Isuzu truck – VIN: 54DC4W1C6JS809840
- 2021 Ford van - VIN: 1FDFE4FN1MDC14298
- 2021 Ford van - VIN: 1FDFE4FNXMDC14297
- 2021 Ford van - VIN: 1FDFE4FN5MDC14966
- 2021 Ford van - VIN: 1FDFE4FN0MDC14289
- 2019 Ford van - VIN: 1FDFE4FS4KDC71436
- 2018 Ford van - VIN: 1FBVU4XMXJKA44494
- 2017 Ford van - VIN: 1FDFE4FS9HDC78561
- 2008 Toyota Prius – VIN: JTDKB20U587809546

91.    In addition, Detective Lemoine stated that one (1) of the vehicles has since been repaired with a total repair cost of $7,359.60, including a replacement catalytic converter and labor. Based upon my experience and consultation with subject matter experts from the National Insurance Crime Bureau, I know that the total value of the catalytic converters stolen from the

vehicle listed above in Concord, NH, on December 6, 2020, exceeds $5,000. This provides insight into the financial burden caused by the highly sophisticated and organized criminal enterprise. The criminal activity shown above causes a significant financial hardship on the vehicle owner(s) while simultaneously resulting in immediate operational impact on the day-to-day mobility of a business when their vehicle(s) are incapacitated.

### 1.    Sullivan Tire – 61 Hall Street in Concord, New Hampshire

92.    Detective Lemoine reported one (1) catalytic converter theft in the parking lot of Sullivan Tire located at 61 Hall Street in Concord, New Hampshire that occurred on December 6, 2022. A review of GPS tracking device data of SUBJECT VEHICLE 1 revealed that SUBJECT VEHICLE 1 was in fact stopped in the immediate vicinity of the parking lot of Sullivan Tire located at 61 Hall Street in Concord, New Hampshire at approximately 01:36 AM and again at approximately 02:49 AM on December 6, 2022. The vehicle parked at 61 Hall Street, Concord, NH that was victim to a catalytic converter theft was a 2018 Isuzu NPR (VIN: 54DC4W1C6JS809842).

### 2.    Industrial Office Park - 41 Terrill Park Drive in Concord, New Hampshire

93.    Detective Lemoine reported a total of three (3) catalytic converter thefts in the parking lot of an industrial office park located at 41 Terrill Park Drive in Concord, New Hampshire that occurred on December 6, 2022. A review of GPS tracking device data of SUBJECT VEHICLE 1 revealed that SUBJECT VEHICLE 1 was in fact located in the immediate vicinity of the parking lot of the industrial office park located at 41 Terrill Park Drive in Concord, New Hampshire from approximately 02:20 AM to 02:26 AM on December 6, 2022.  The three (3) vehicles parked at 41 Terrill Park Drive in Concord, New Hampshire that were victim to catalytic converter theft were

2020 Nissan NV200 (VIN: 3N6CM0KN0LK704672), a 2020 Nissan NV200 (VIN: 3N6CM0KN3MK694785) and a 2020 Nissan NV200 (VIN: 3N6CM0KN9MK694676).

### 3. Residence Inn – 91 Hall Street in Concord, New Hampshire

94.     Detective Garrett Lemoine reported a total of two (2) vehicles subject to catalytic converter thefts in the parking lot of Residence Inn located at 91 Hall Street in Concord, New Hampshire that occurred on December 6, 2022. A review of GPS tracking device data of SUBJECT VEHICLE 1 revealed that SUBJECT VEHICLE 1 was in fact located in the immediate vicinity of Residence Inn located at 91 Hall Street in Concord, New Hampshire at approximately 01:30 AM and also from 02:52 AM to 02:55 AM on December 6, 2022. During the time in which SUBJECT VEHICLE 1 was positioned in the immediate vicinity of the above-referenced Residence Inn, a total of two (2) vehicles were victim to catalytic converter thefts; a 2017 Nissan NV200 (VIN: 3N6CM0KN4HK693814) and a 2008 Toyota Prius (VIN: JTDKB20U883318802). Below are surveillance images of the thefts taking place at 91 Hall Street, Concord, NH on December 6, 2022:







**4.    Perry Brothers Monuments – 253 Sheep Davis Road in Concord, New Hampshire**

95.     Detective Garrett Lemoine reported a total of one (1) vehicle subject to catalytic converter theft in the parking lot of Perry Brothers Monuments located at 253 Sheep Davis Road in Concord, New Hampshire that occurred on December 6, 2022. A review of GPS tracking device data of SUBJECT VEHICLE 1 revealed that SUBJECT VEHICLE 1 was in fact located in the immediate vicinity of the parking lot of Perry Brothers Monuments located at 253 Sheep Davis Road in Concord, New Hampshire from approximately 03:31 AM to 03:33 AM on December 6, 2022. The vehicle parked at 253 Sheep Davis Road in Concord, New Hampshire that was victim to a catalytic converter theft was 2015 Isuzu Truck (VIN: 54DC4W1C6JS809840).

### 5.      Industrial Office Park – 2 Industrial Park Drive in Concord, New Hampshire

96.     Detective Garrett Lemoine reported a total of seven (7) vehicles subject to catalytic converter thefts in the parking lot of the industrial office park parking lot located at 2 Industrial Park Drive in Concord, New Hampshire that occurred on December 6, 2022. A review of GPS tracking device data of SUBJECT VEHICLE 1 revealed that SUBJECT VEHICLE 1 was in fact located in the immediate vicinity of the industrial office park parking lot located at 2 Industrial Park Drive in Concord, New Hampshire from approximately 03:37 AM to 03:52 AM on December 6, 2022. The seven (7) vehicles parked at 2 Industrial Park Drive in Concord, New Hampshire that were victim to a catalytic converter theft were: a 2021 Ford van (VIN: 1FDFE4FN1MDC14298), a 2021 Ford Van (VIN: 1FDFE4FNXMDC14297), a 2021 Ford van (VIN: 1FDFE4FN5MDC14966), a 2021 Ford van (VIN: 1FDFE4FN0MDC14289), a 2019 Ford van (VIN: 1FDFE4FS4KDC71436), a 2018 Ford van (VIN: 1FBVU4XMXJKA44494), and a 2017 Ford van (VIN: 1FDFE4FS9HDC78561).

### 6.      ENE Systems - 155 River Road, Bow, NH

97.     In addition to the above-referenced catalytic converter thefts that occurred in Concord, New Hampshire on December 6, 2022, additional catalytic converter thefts occurred on December 6, 2022, at ENE Systems located at 155 River Road, Bow, New Hampshire and were reported to Bow, New Hampshire Police Department. Investigators spoke with Bow, New Hampshire Lieutenant Matthew Pratte. Lieutenant Pratte stated that one (1) vehicle was victim of a catalytic converter theft on December 6, 2022, in a parking lot located at 155 River Road in Bow, New Hampshire. It should be noted that Lieutenant Pratte informed investigators that River Road has since received new street number and noted that the old street address was 29 River Road. A review of GPS tracking device data of SUBJECT VEHICLE 1 revealed that SUBJECT VEHICLE 1 was in fact located in the immediate vicinity of the parking lot located at 155 River Road (formerly 29 River Road on the date of the theft) in Bow, New Hampshire from approximately 04:09 AM to 04:17 AM on December 6, 2022. During the time in which SUBJECT VEHICLE 1 was positioned in the immediate vicinity of 155 River Road, Bow, NH, a total of one (1) vehicle was victim to a catalytic converter theft; 2015 Nissan NV200. Below are images from the surveillance cameras in the area of 155 River Road (formerly 29 River Road), Bow, NH capturing the theft on video:







**7.      Shell Gas Station – 189 Chelmsford Street, Chelmsford, Massachusetts**

98.     A review of GPS tracking device data for SUBJECT VEHICLE 1 revealed that SUSPECT VEHICLE 1 was in fact located in the immediate vicinity of 189 Chelmsford Street in Chelmsford, Massachusetts on December 6, 2022, from 12:12 AM through 12:15 AM.  This address is a commercial business containing a Shell Gas Station and Nouria Energy Convenience Store #1017.

99.     On Thursday December 8, 2022, investigators received video surveillance of this location for the times in which SUBJECT VEHICLE 1 was located at the Shell Gas Station. Specifically, video from Camera 4 and Camera 16 showed SUBJECT VEHICLE 1 utilizing the gas pump, and an individual wearing black clothing consistent with prior thefts entering the store ("Suspect 1"). Of note, the Suspect 1 is identified to be wearing a black hat with an Adidas logo. Investigators believe that Suspect 1 is Rafael DAVILA and is wearing a hat that investigators have previously observed DAVILA wearing while at Home Depot. A second as-yet unidentified suspect

is observed exiting the front passenger compartment of SUBJECT VEHICLE 1, but remains with the vehicle.

100.    From review of the surveillance video, it appears that SUBJECT VEHICLE 1 has a registration plate attached to it that is believed by investigators to be Connecticut AX88253.   A check of the motor vehicle databases revealed that Connecticut AX88253 should be attached to a gray 2012 Acura MDX Technology package.   Investigators believe that the use of this new license plate demonstrates sophistication and planning as the Connecticut AX88253 plate is not reported stolen and is actively registered to a similar vehicle.   Still images from the surveillance video follow:





**8.      Rapid Refill Gas – 1 Peach Tree Lane, Merrimack, NH**

101.    A review of GPS tracking device data of SUBJECT VEHICLE 1 revealed that SUBJECT VEHICLE 1 was in fact stopped in the immediate vicinity of 1 Peach Tree Lane in Merrimack, New Hampshire on December 6, 2022, at 05:34 AM. This address is a commercial business containing a Rapid Refill Gas Station and Convenience Store.

102.    On Thursday December 8, 2022, investigators obtained video surveillance from this location from Merrimack Detective Kevin Manuele.  In this video SUBJECT VEHICLE 1 is observed entering the area and parking.  Two suspects exit SUBJECT VEHICLE 1.  The first suspect, believed to be DAVILA, is wearing similar clothing to the earlier video obtained in Chelmsford and continues to wear the black hat with Adidas logo, but appears to have removed a jacket, revealing white lettering on his shirt.  A second suspect is similarly dressed in all black ("Suspect 2").  DAVILA (Suspect 1) and Suspect 2 both enter the store. While inside the store, Suspect 2 is observed utilizing a cellular phone.



  

Suspect 1

  

Suspect 2

### 9.    12/06/22: FURTHER INVESTIGATION

103.    Investigators obtained records and video footage from Home Depot. Review of those records revealed that on December 5, 2022, at 8:37 PM, DAVILA purchased thirty (30) 9-inch Diablo Sawzall blades ("Diablo 9" 8/10 TPI BI-M THK MTL 15PK") for a total of $101.94 at a Home Depot located in Westfield, Massachusetts. DAVILA utilized self-checkout and paid $110 in cash. Of note, DAVILA can be seen wearing black clothing, a black jacket, and a black Adidas hat. After the purchase, surveillance video showed that DAVILA exited the store and entered a black Chevrolet Suburban and departed the area. A still image showing DAVILA exiting the Home Depot and the black Chevrolet Suburban follows:

 

**D.      12/21/22: MANCHESTER, NEW HAMPSHIRE THEFT:**

104.     On Tuesday December 20, 2022, investigators reviewed data received from the GPS tracking device attached to SUBJECT VEHICLE 1.  This data revealed that on December 5, 2022, at approximately 10:00 PM the vehicle left 799 S. West Street in Feeding Hills, MA and traveled to the area of Manchester, New Hampshire at about 00:20 AM on December 21, 2022. Investigators conducted soft surveillance during this time.   At approximately 1:40 AM on December 21, 2022, SUBJECT VEHICLE 1 began travelling at high speed southbound toward Massachusetts.  SUBJECT VEHICLE 1 continued its high-speed travel to Springfield, MA, and arrived at 381-383 Parker Street, Springfield, MA at approximately 3:20 AM.  Investigators then observed the vehicle parked behind 383 Parker Street, Springfield, MA.

105.     Investigators contacted Manchester Police and learned that at approximately 1:39 AM, Manchester Police received a call from a victim of a catalytic converter theft, D.C.  (Case #22-020230). According to the report, D.C. informed police that he was at his residence at 400 Bedford Street, when he observed a vehicle backed up towards his door. D.C. then opened his door and observed two males attempting to break into his vehicle that was parked nearby.  D.C. reported that he obtained a baseball bat and smashed the rear window of the vehicle.  D.C. reported that the vehicle had a Rhode Island license plate #435977.  The responding officer looked at D.C.'s vehicle and noted that the catalytic converter had been removed.

106.     Additionally, multiple investigators were in the vicinity of 400 Bedford Street, Manchester, NH, at approximately 1:33 AM, on December 21, 2022, conducting surveillance, and in fact heard the catalytic converter strike the pavement prior to D.C. smashing the rear window of SUBJECT VEHICLE 1.

107.     Investigators reviewed the GPS tracking data for SUBJECT VEHICLE 1 and determined that at 1:33 AM on December 21, 2022, SUBJECT VEHICLE 1 came to a stop a few feet away from 400 Bedford Street, Manchester, New Hampshire, where it remained until approximately 1:40 AM, when it travelled from the Manchester, New Hampshire area to 381-383 Parker Street, Springfield, Massachusetts.  Later on December 21, 2022, and for several days following, investigators observed SUBJECT VEHICLE 1 parked in the rear driveway area of 381-383 Parker Street, Springfield, Massachusetts.

108.     At approximately 2:00 PM on December 21, 2022, SUBJECT VEHICLE 2 left 799 S. West Street in Feeding Hills, MA and travelled to 381-383 Parker Street, Springfield, MA, arriving at approximately 2:57 PM after making a number of stops.  SUBJECT VEHICLE 2 remained at 383 Parker Street, Springfield, MA until approximately 4:30 PM, when it left 383 Parker Street and then traveled to 371 S Westfield Street, Feeding Hills, MA, arriving at approximately 5:18 PM after making a number of stops.  Of note, 371 S Westfield Street, Feeding Hills, MA, is the location of 57 Auto, the auto dealer owned by Nicholas Battista. SUBJECT VEHICLE 2 remained at 371 S Westfield Street, Feeding Hills, MA, from 5:18 PM until 5:28 PM, when it left and traveled to 799 S. West Street, Feeding Hills, MA, arriving at 5:32 PM.

**E.     12/28/22: THEFT OF CATALYTIC CONVERTERS FROM EAST HAMPTON, MA AND HOLYOKE, MA:**

109.     On December 29, 2022, Easthampton, Massachusetts Police received a report of a theft of a catalytic converter from a red 2015 Mitsubishi Outlander that was parked overnight in at 391 Main Street, Easthampton, Massachusetts. Investigators reviewed the data from the GPS tracking device on the MAROON ACURA MDX for December 29, 2022, and the data revealed that the MAROON ACURA MDX was in the vicinity of 391 Main Street, Easthampton, MA at approximately 12:41 AM, and 3:30 AM on December 29, 2022.

110.    Later on December 29, 2022, Easthampton, Massachusetts Police received a second report of a theft of a catalytic converter from a 2006 green Honda Pilot that was parked overnight at 41 South Street, Easthampton, MA. Investigators reviewed the data from the GPS tracking device on the MAROON ACURA MDX for December 29, 2022, and the data revealed that the MAROON ACURA MDX was in the vicinity of 41 South Street, Easthampton, MA at approximately 12:45 AM on December 29, 2022.

111.    On December 29, 2022, Holyoke, Massachusetts Police received a report of a theft of a catalytic converter from a 2006 Honda Pilot that was parked overnight at 1 Barrett Avenue, Holyoke, MA. Investigators reviewed the data from the GPS tracking device on the MAROON ACURA MDX for December 29, 2022, and the data revealed that the MAROON ACURA MDX was in the vicinity of 1 Barrett Avenue, Holyoke, MA at approximately 4:05 AM and 4:20 AM on December 29, 2022.

112.    Review of the data from the GPS tracking device on the MAROON ACURA MDX showed that the MAROON ACURA MDX left 381-383 Parker Street, Springfield, MA, at approximately 11:23 PM on December 28, 2022.  The GPS data showed that the MAROON ACURA MDX then travelled to the area of Southampton, MA, arriving at approximately 12:09 AM on December 29, 2022, and made a number of stops in parking lots, consistent with targeting vehicles for catalytic converter theft. The MAROON ACURA MDX continued to remain in the area of Easthampton and Southampton, driving through and making brief stops in parking lots. At approximately 3:35 AM, the MAROON ACURA MDX left the area of 391 Main Street, Easthampton, Massachusetts and proceeded to Holyoke, Massachusetts, driving through and making brief stops in parking lots, consistent with targeting vehicles for catalytic converter theft.. At approximately 4:00 AM, the MAROON ACURA MDX left Holyoke, MA, and returned to 381-

383 Parker Street, Springfield, MA, arriving at 4:40AM. The MAROON ACURA MDX remained at 381-383 Parker Street without further movement for the entirety of December 29, 2022.

      1.      **12/28/22: FURTHER INVESTIGATION**

113.    Investigators obtained records and video footage from Home Depot. Review of those records revealed that on December 28, 2022, at 8:37 PM, DAVILA purchased fifteen (15) 9-inch Diablo Sawzall blades ("Diablo 9" 8/10 TPI BI-M THK MTL 15PK") for a total of $54.16 at a Home Depot located in Westfield, Massachusetts. DAVILA utilized self-checkout and paid $60 in cash. Of note, DAVILA can be seen wearing black clothing, a black jacket, and a black Adidas hat. After the purchase, surveillance video showed that DAVILA exited the store and entered a black pickup truck with an extended cab and silver detail around the windows, consistent with a Dodge Ram, and departed the area. A still image showing DAVILA exiting the Home Depot and the pickup truck follows:



      F.      **1/5/23: THEFT OF CATALYTIC CONVERTERS FROM FRAMINGHAM, MA:**

114.    Since January 5, 2023, Framingham, Massachusetts Police received a number of reports of catalytic converters being stolen overnight. The thefts were reported from the following locations:

| Address | Year | Make | Model |
|---|---|---|---|
| 20 Ruth Dr | 2018 | Toyota | Corolla |
| 1622 Worcester Rd | 2005 | Toyota | Prius |
| 1610 Worcester Rd | 2006 | Toyota | Prius |
| 17 Wilmot Rd | 2018 | Toyota | Corolla |
| 1640 Worcester Rd | 2014 | Toyota | Corolla |
| 154 Cherry St | 2014 | Toyota | Corolla |
| 75 Georgetown Dr | 2021 | Toyota | Corolla |
| 640 Worcester Rd | 2021 | Toyota | Corolla |
| 8 Tara Rd | 2014 | Toyota | Corolla |

115. Investigators reviewed the data from the GPS tracking device on the MAROON ACURA MDX for January 5, 2023, and the data revealed that the MAROON ACURA MDX was in the vicinity of the theft locations as follows:

a.   the residential apartment complex at Worcester Road, Framingham, MA from approximately 12:56 AM to 1:48 AM, and 4:30 AM to 5:00 AM.  While in the vicinity of Worcester Road, Framingham, MA, the MAROON ACURA MDX made numerous stops in various area of the parking lot consistent with targeting vehicles for catalytic converter theft.

b.   20 Ruth Drive, Framingham, MA, at approximately 3:36 AM.

c.   17 Wilmot Road, Framingham, MA at approximately 4:15 AM.

d.   150 Cherry Street, Framingham, MA at approximately 3:58 AM.

e.   85 Georgetown Drive, Framingham, MA at approximately 3:01 AM.

f.   640 Worcester Road, Framingham, MA at approximately 3:01 AM (in close proximity to 85 Georgetown Drive.

g.   8 Tara Road, Framingham, MA at approximately 3:20 AM.

116. On January 4, 2023, the data from the GPS tracking device showed that SUBJECT VEHICLE 1 left the vicinity of 799 S. West Street, Feeding Hills, MA, at approximately 10:20 PM. SUBJECT VEHICLE 1 proceeded to 383 Parker Street, Springfield, MA, arriving at 10:34 PM, and stopping there. At 10:52 PM, SUBJECT VEHICLE 1 departed 383 Parker Street, Springfield, MA, and proceeded to I-90 and travelled eastbound to the Worcester area, and then

returned to I-90 and traveled eastbound to the Framingham, MA, area, where it exited the I-90 onto Route 9 at approximately 12:55 AM on January 5, 2023.  SUBJECT VEHICLE 1 remained in Framingham, MA until approximately 5:00 AM on January 5, 2023, when it travelled onto to I-90 and travelled westbound. While travelling westbound, SUBJECT VEHICLE 1 entered the Charlton area westbound rest stop area at approximately 5:25 AM and departed at approximately 5:28 AM.  Following that, SUBJECT VEHICLE 1 travelled directly to 799 S. West Street, Feeding Hills, MA.

117.   Investigators conducting surveillance in Framingham, MA on January 5, 2022, observed the MAROON ACURA MDX to have the Rhode Island license plate #435977 attached to it.

1.   **01/05/23: FURTHER INVESTIGATION**

118.   Investigators obtained surveillance video from the Charlton area westbound rest stop convenience store and McDonald's restaurant.  Surveillance video depicts an individual who appears to be DAVILA entering the associated convenience store, proceeding through to the McDonald's, making a purchase, and then exiting within two minutes.[9]  Still images of DAVILA entering and exiting the Charlton rest area follow:

---

[9] The timestamps of the videos from the convenience store and McDonald's were not properly set.  The videos comport with the timing of GPS tracking device data for SUBJECT VEHICLE 1 in that DAVILA was present in the Charlton rest stop for less than four minutes.



| Entering | Exiting with McDonald's bag |

## V.    TARGET PHONE 3, TARGET PHONE 4, AND TARGET PHONE 5

### 1.    TARGET PHONE 3

119.    Investigators reviewed call detail records of TARGET PHONE 1 for the period of March 1, 2022, through January 5, 2023, and conducted a comparison of telephone contacts (voice and text message) between DAVILA (utilizing TARGET PHONE 1) and TORRES (utilizing TARGET PHONE 3, 413-612-5858) in relation to the thefts listed above involving the MAROON ACURA MDX. Investigators identified the following contacts between DAVILA and TORRES within approximately 48 hours of catalytic converter thefts involving the MAROON ACURA MDX (listed above):

| Date | Time of Contact |
|------|-----------------|
| 3/15/22 | 02:20:38 PM, 02:24:29 PM, 02:24:29 PM, 02:24:37 PM, 02:42:02 PM, 02:59:45 PM, 07:10:42 PM |
| 3/27/22 | 02:53:39 PM, 02:54:15 PM, 06:03:48 PM, 07:55:40 PM, 08:01:18 PM, 08:04:18 PM |
| 5/6/22 | 01:42:12 PM |
| 5/11/22 | 03:30:15 PM, 03:37:41 PM, 03:38:12 PM, 03:42:55 PM |
| , 5/12/22 | 12:01:44 PM, 01:05:57 PM, 01:31:57 PM, 03:18:28 PM, 03:59:15 PM, 05:04:35 PM, 05:17:13 PM, 05:23:06 PM |
| 5/18/22 | 11:27:33 AM, 11:36:23 AM, 11:45:03 AM |
| 5/19/22 | 11:42:05 AM, 01:04:41 PM, 01:06:33 PM |
| 7/14/22 | 12:15:52 PM, 02:27:20 PM, 03:07:53 PM, 04:46:27 PM |
| 7/21/22 | 12:56:15 PM, 01:51:37 PM, 02:01:47 PM, 02:48:03 PM, 02:53:28 PM, 02:54:13 PM |
| 7/26/22 | 01:24:25 PM, 01:26:02 PM |

| 7/28/22 | 01:25:33 PM, 01:25:40 PM |
|---|---|
| 7/29/22 | 01:57:34 PM, 07:01:36 PM, 07:07:33 PM |
| 8/16/22 | 01:20:12 PM, 02:13:54 PM, 02:14:14 PM, 02:53:04 PM |
| 8/18/22 | 11:25:18 AM, 11:25:51 AM, 11:30:45 AM, 11:48:34 AM, 12:10:06 PM, 12:21:07 PM, 04:50:45 PM, 05:22:18 PM, 06:28:31 PM, 06:37:02 PM, 06:37:06 PM, 10:24:14 PM, 10:24:43 PM, 10:30:42 PM |
| 8/23/22 | 02:16:06 PM, 02:21:49 PM, 04:45:02 PM, 04:45:33 PM, 05:02:39 PM |
| 8/26/22 | 03:03:43 PM, 03:10:06 PM, 03:14:35 PM |
| 8/31/22 | 12:51:17 PM, 01:40:06 PM, 01:40:36 PM, 04:23:53 PM |
| 9/1/22 | 01:34:42 PM, 09:14:01 PM |
| 9/2/22 | 12:10:23 PM, 01:01:13 PM |
| 9/6/22 | 02:20:40 PM, 02:29:45 PM, 03:09:43 PM, 03:10:55 PM |
| 9/7/22 | 07:02:03 PM, 07:43:25 PM |
| 9/8/22 | 01:07:03 PM |
| 9/13/22 | 03:26:18 PM, 05:02:21 PM, 05:02:57 PM, 05:03:33 PM, 09:40:45 PM |
| 9/15/22 | 01:47:02 PM, 01:47:13 PM, 03:44:55 PM, 04:34:56 PM, 04:41:18 PM |
| 9/20/22 | 03:20:18 PM, 04:12:22 PM, 04:12:30 PM |
| 9/23/22 | 01:45:27 PM, 01:45:46 PM |
| 9/29/22 | 11:30:43 AM, 11:43:11 AM |
| 10/3/22 | 04:22:15 PM, 05:49:44 PM |
| 11/27/22 | 04:18:49 PM, 04:20:29 PM |
| 11/28/22 | 02:44:42 PM, 02:51:50 PM, 07:22:06 PM |
| 12/6/22 | 04:17:30 PM, 06:55:10 PM |
| 12/21/22 | 06:44:15 PM |
| 12/22/22 | 01:48:40 PM, 01:50:19 PM |
| 12/28/22 | 03:06:29 PM, 04:00:23 PM, |
| 1/4/23 | 01:26:38 PM, 01:27:40 PM, 03:38:15 PM |

## 2.    TARGET PHONE 4

120.    Investigators obtained subscriber records for TARGET PHONE 4 (860-595-9762) and learned that the listed user is "Santo Feliberty" who lists a 201 State Street, Enfield, CT address. The financially liable party for TARGET PHONE 4 is Evilin Lopez, who lists a 201 State Street, Enfield, CT, address.   Investigators believe Evilin Lopez to be the mother of Santo FELIBERTY.   TARGET PHONE 4 was queried in a variety of law enforcement investigative databases to include CLEAR, Accurint, Cellhawk, and Zetx, and those databases associated TARGET PHONE 4 with Santo FELIBERTY.

121.    Investigators reviewed call detail records of TARGET PHONE 1 for the period of March 1, 2022, through October 28, 2022, and conducted a comparison of contacts (voice and text message) between DAVILA (utilizing TARGET PHONE 1) and FELIBERTY (utilizing TARGET PHONE 4) in relation to the thefts listed above involving the MAROON ACURA MDX.  During the period of March 1, 2022, to October 28, 2022, there were 150 contacts between TARGET PHONE 1 and TARGET PHONE 4.  Investigators identified the following contacts between DAVILA and FELIBERTY (utilizing TARGET PHONE 4) within approximately 48 hours of catalytic converter thefts involving the MAROON ACURA MDX (listed above):

| Date | Times of Contacts |
|------|-------------------|
| 3/13/22 | 12:05:20 AM, 12:05:37 AM, 12:05:57 AM, 12:43:26 AM, 12:43:39 AM, 01:06:43 AM |
| 5/4/22 | 09:39:17 AM, 09:15:09 PM, 09:31:44 PM, 09:32:47 PM |
| 5/6/22 | 01:52:57 PM, 02:29:25 PM, 02:59:35 PM, 03:37:57 PM, 04:03:38 PM |
| 8/18/22 | 05:11:58 PM, 05:22:57 PM, 05:37:59 PM |
| 8/23/22 | 02:11:21 PM, 02:22:32 PM, 03:50:18 PM, 03:50:50 PM, 03:53:57 PM, 03:59:29 PM, 04:41:23 PM, 04:42:38 PM, 06:23:23 PM, 06:23:27 PM, 06:26:06 PM |
| 8/30/22 | 02:25:14 PM, 02:25:23 PM, 02:30:17 PM, 02:55:04 PM, 02:55:36 PM |
| 8/31/22 | 12:49:46 PM, 12:53:56 PM |
| 9/1/22 | 01:16:57 PM, 01:35:50 PM |
| 9/2/22 | 12:11:13 PM, 01:18:11 PM, 08:59:16 PM, 09:08:20 PM |
| 9/5/22 | 02:24:55 AM, 02:25:27 AM, 02:34:29 AM |
| 9/6/22 | 12:13:14 PM, 01:40:35 PM |
| 9/7/22 | 03:05:41 PM, 03:05:56 PM, 03:06:15 PM, 03:06:51 PM |
| 9/9/22 | 03:42:30 AM, 03:44:48 AM, 02:25:39 PM, 04:05:15 PM, 04:06:27 PM, 04:07:40 PM, 04:08:13 PM, 05:04:17 PM |
| 9/13/22 | 06:08:51 AM, 03:26:54 PM, 04:22:40 PM |
| 9/15/22 | 11:51:24 AM, 12:09:45 PM, 03:10:10 PM, 03:11:18 PM, 03:56:19 PM, 05:20:47 PM, 05:23:56 PM |
| 9/16/22 | 10:37:04 AM, 10:37:15 AM, 02:02:58 PM, 10:31:38 PM, 11:18:07 PM |

### 3.    TARGET PHONE 5 AND FELIBERTY

122.    Investigators obtained subscriber records for TARGET PHONE 5 (860-712-9926) and learned that the financially liable party is Evilin Lopez, who lists a billing address of 201 State Street, Enfield, CT, address.  Based upon review of call detail records, FELIBERTY is believed

to be the actual user of TARGET PHONE 5.[10]  Contacts between TARGET PHONE 1 and TARGET PHONE 4 end on or about October 28, 2022. Contacts between TARGET PHONE 1 and TARGET PHONE 5 commence on October 29, 2022, which leads investigators to believe that FELIBERTY is the current user of TARGET PHONE 5.  Investigators identified the following contacts between DAVILA and FELIBERTY (utilizing TARGET PHONE 5) within approximately 48 hours of catalytic converter thefts involving the MAROON ACURA MDX (listed above):

| Date | Time of Contact |
|------|-----------------|
| 12/5/22 | 03:07:56 PM |
| 12/6/22 | 04:18:56 PM, 04:25:42 PM, 04:25:48 PM, 06:54:26 PM, 07:56:17 PM, 08:05:50 PM |
| 12/20/22 | 12:26:36 PM, 09:02:44 PM |
| 12/21/22 | 11:13:48 AM, 02:18:50 PM, 02:58:13 PM, 02:58:47 PM, 03:03:39 PM, 04:23:33 PM, 04:29:23 PM, 08:47:30 PM |
| 12/22/22 | 12:07:02 PM, 12:43:53 PM, 12:52:24 PM, 03:50:18 PM, 04:02:49 PM, 08:15:28 PM, 08:32:39 PM |
| 12/29/22 | 02:05:31 PM |
| 1/4/23 | 01:14:12 PM, 01:17:52 PM, 04:18:18 PM, 04:28:22 PM, 04:59:08 PM, 04:59:36 PM, 05:21:47 PM, 09:34:44 PM |
| 1/5/23 | 02:52:23 PM, 04:47:45 PM, 05:29:28 PM |

### 4.      FELIBERTY and 381-383 PARKER STREET

123.    On Sunday December 18, 2022, Chicopee Police conducted a motor vehicle stop on a black 2019 Dodge Ram bearing Massachusetts Reg. PS4821. The operator of the motor vehicle was identified as Santo FELIBERTY (Chicopee Police Report #22CHI-5497-OF). The vehicle is registered to Evilin Lopez who is believed to be the mother of Santo FELIBERTY. Chicopee Police conducted a database query which revealed that FELIBERTY's license status was suspended in Massachusetts, and he was instructed to contact an individual with a valid license to

---

[10] Of note, there are no contacts between TARGET PHONE 4 and TARGET PHONE 5, suggesting that the same user employed both numbers.

take control of the vehicle. The report states that Alisa Feliberty D.O.B. xx/xx/1989 arrived on scene and presented her valid Massachusetts Driver's License and took authority of the vehicle. Of note Alisa Feliberty's Massachusetts Driver's License listed an address of 22 Massreco Street in Springfield, which is the same address listed for Santo FELIBERTY's Massachusetts License. Investigators believe Alisa Feliberty to be the paramour of Santo FELIBERTY.

124.    A query of 381-383 Parker Street on the Springfield, Massachusetts assessor's office revealed that the property is owned by Alisa Feliberty, who lists 22 Massreco Street, Springfield, Massachusetts as her address.[11]

125.    By way of background, surveillance has been conducted at the 799 S. West Street in Feeding Hills.  Through surveillance, investigators learned that on December 9, 2022, at approximately 11:07 AM a black Dodge Ram with heavy window tint applied pulled into the driveway of 799 S. West Street. A lone unidentified occupant exited the truck, approached the entrance of the residence, and is observed walking towards the rear of the MAROON ACURA MDX parked in the driveway. A subject who appeared to be Rafael DAVILA exited the area of the residence's front entrance, met with the occupant of the Dodge Ram, and escorted him towards the residence out of view. At approximately 11:34 AM, the Dodge Ram exited the driveway and is observed by an automated license plate reader in Agawam at 11:43 AM as Massachusetts

---

[11] See https://www.springfield-ma.gov/finance/assessors-search/assessors.php?parcel=095101780. On Wednesday, January 11, 2023, Trooper Keller Williams observed a white Mercedes bearing Massachusetts Registration 3BPR65 in the driveway at 381-383 Parker Street.  A database query reveals that the registered owner of this vehicle is Alisa Feliberty.  Additionally, a search of the Massachusetts Secretary of State website reveals that Alisa Feliberty is listed as the owner of Designer Obsessions LLC incorporated on October 26, 2021. The listed address for the business and Alisa Feliberty on this document is 381 Parker Street in Springfield, Massachusetts.

Registration PS4821.  It is of note that the Dodge Ram has been observed in the driveway at 799 S. West Street on December 23, 2022, through December 31, 2022.

126.    On December 28, 2022, Rafael DAVILA was also observed on Home Depot surveillance video utilizing entered a black pickup truck with an extended cab and silver detail around the windows consistent with the black Dodge Ram operated by FELIBERTY, during the purchase of Sawzall blades used in furtherance of the TARGET OFFENSES (see above).   A picture of the black Dodge Ram in the driveway and passing the automatic license plate reader are attached below.



127.    Investigators have monitored GPS tracking data from the MAROON ACURA MDX prior to and following the thefts. From that data, investigators discerned a particular pattern of stops at 381-383 Parker Street, Springfield, MA:

a. On December 21, 2022, the MAROON ACURA MDX, while equipped with a GPS device, returned from Manchester, New Hampshire where it was involved in the theft of a catalytic converter and had its rear window shattered. Upon returning to Massachusetts, the MAROON ACURA MDX traveled to 381-383 Parker Street in Springfield, Massachusetts. The MAROON ACURA MDX arrived at Parker Street at approximately 03:22 AM and was observed backed into the rear driveway parked next to a free-standing garage. It is of note that the Massachusetts State Police were conducting aerial surveillance of 381-383 Parker Street via a fixed wing aircraft. Investigators conducted additional surveillance of the driveway at 381-383 Parker Street and observed the black Dodge Ram (Massachusetts Reg PS4821) parked in the rear of 381-383 Parker Street at 06:22 AM.

b. On Wednesday December 28, 2022, the MAROON ACURA MDX departed the area of Parker Street at approximately 11:23 PM. The MAROON ACURA MDX then traveled to Easthampton and Holyoke, Massachusetts where it is involved in catalytic converter thefts before returning to 381-383 Parker Street on Thursday December 29 at 04:42:26 AM (see above).

c. On Wednesday January 4, 2023, at 10:15 PM the MAROON ACURA MDX exited the driveway at 799 S. West Street in Feeding Hills. The MAROON ACURA MDX stopped at 381-383 Parker Street at 10:34 PM for approximately five (5) minutes. The MAROON ACURA MDX stayed in the area of 381-383 Parker until 10:52 PM. The MAROON ACURA MDX was live tracked via GPS and monitored in real time by investigators as it traveled to Framingham, Massachusetts and conducted catalytic converter thefts. Upon returning from Framingham on January 5, 2023, the MAROON ACURA MDX traveled to 381-383 Parker Street, stopping at 06:08 AM before coming to a final stop at 799 S West Street in Feeding Hills at 06:28 AM. Investigators believe this activity is consistent with DAVILA dropping a coconspirator off and proceeding home. The black Dodge Ram (Massachusetts Reg. PS4821) was also observed by investigators parked in the driveway at 381-383 Parker Street periodically throughout the day of January 5, 2023.

## VI.   BASIS FOR PRECISION LOCATION INFORMATION REQUEST AND SCOPE OF HISTORICAL CELL SITE LOCATION INFORMATION

128.   The precise location information (PLI) requested by the proposed warrants will enable investigating agents to locate and monitor the whereabouts of the cellular phones used by the TARGETS. For example, DAVILA that is believed to be carried by him on his person. Indeed, there is extensive evidence from the historical CSLI that DAVILA brings TARGET PHONE 1 with him to commit the TARGET OFFENSES and utilizes TARGET PHONE 1 to conduct activity during and in furtherance of the TARGET OFFENSES. Additionally, investigators reasonably

believe that TORRES and FELIBERTY are involved in the thefts and/or handling and monetization of the catalytic converters after the thefts.  The PLI for TARGET PHONE 3, and TARGET PHONE 5 will provide evidence as to the whereabouts of TORRES and FELIBERTY, and yield information as to locations of interest, such storage locations and premises in which planning and preparation take place.

129.    Investigators have determined that TARGET PHONE 3 is being used by TORRES in connection with catalytic converter transactions and TARGET PHONE 3 has many contacts with TARGET PHONE 1.

130.    TARGET PHONE 5 has been identified as FELIBERTY's current phone number that is being used to contact DAVILA.

131.    Therefore, the PLI being sought will permit investigators to monitor the whereabouts and movements of DAVILA, TORRES and FELIBERTY, and identify places of interest for these individuals that may be used in furtherance of the TARGET OFFENSES or contain evidence of the TARGET OFFENSES, such as vehicles used in furtherance of the TARGET OFFENSES, and locations where they prepare for the thefts, or locations where stolen goods or proceeds are potentially being stored or monetized. Additionally, the PLI being sought will assist investigators in coordinating potential response to thefts and other crimes being committed and potentially interdict the thefts before they take place or apprehend them in the immediacy thereafter.   Lastly, though investigators have identified a pattern of using the MAROON ACURA MDX in catalytic converter thefts, the TARGETS just as easily could employ another vehicle. Consequently, the PLI for TARGET PHONE 1, TARGET 3 and TARGET PHONE 5 will permit investigators to conduct an investigation of the entire criminal enterprise and potentially identify other vehicles and aspects of the criminal pattern of conduct.

132.    Further, I am aware that the cell phones of individuals engaged in coordinated thefts, and phones utilized by those monetizing stolen property often contain evidence, fruits, and instrumentalities of their criminal conduct.  Among other things, I also know that individuals engaged in coordinated and pre-planned thefts frequently use their cellular phones to plan and further their activity, such as by using their phones to search or store information about their crimes, plan their routes, obtain location and navigational information, to communicate with others about their ongoing activities, and to retain pictures, notes, and other information relevant to their crimes.  From review of the call detail records and CSLI, investigators believe that the TARGETS are utilizing their cellular phones to plan, coordinate, and communicate regarding their criminal activity. Accordingly, the PLI requested by the warrants will also enable investigating agents to determine the location of TARGET PHONE 1, TARGET PHONE 3 and TARGET PHONE 5, for the purposes of later obtaining warrants to seize and search them for evidence of the TARGET OFFENSES.

## VII.    THE RELEVANT TECHNOLOGY

133.    In my training and experience, I have learned that T-Mobile and AT&T are companies that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone for a specific date and time but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

134.    Based on my training and experience, I know that cell phone carriers collect cell-site data about devices such as TARGET PHONE 1, TARGET PHONE 3, TARGET PHONE 4 and TARGET PHONE 5.  I also know that wireless providers collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

135.    Based on my training and experience, I know that wireless providers typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the T-Mobile and AT&T user or users and may assist in the identification of co-conspirators and/or victims.

136.    In addition, based upon my experience, education, and training, as well as the training and experience of other officers involved in this investigation, I know that cellular devices are often used by suspects before, during and after the commission of a crime. Cell tower sites can

be utilized to identify locations of suspects in a crime. It is also my opinion, as well as the opinion of other investigators involved in this investigation, that cellular telephones are kept by perpetrators of crimes so they can contact co-conspirators, family member's and/or friends to be updated on the progress of a theft and the efforts being used to locate the person or persons responsible for the crime.  In my experience, and that of the other investigators involved in this investigation, the above evidence could be found in the records maintained by cellular service providers, as well as, within the physical cell phone. Cellular service providers also maintain historical switch/cell site data, which document the specific geographic location of the communication towers that each individual cell phone connects to wirelessly, during incoming/outgoing phone calls and text messages, and also during internet use and general system operations. The mapping of these cell tower sites can document a suspect's path of escape from, or proximity to, a crime scene on a specific date at a particular time, and/or confirm or refute a suspect's alibi.

137.    Wireless providers also potentially maintain engineering and other data that wireless providers refer to by different names. This data is utilized by the provider for various purposes  including to ensure coverage and signal propagation in areas where the wireless service is provided. Such data can also contain technical information that can provide the location of a cellular device. The terminology employed by various providers for such engineering data includes RTT records, PCMD records, NELOS records, TrueCall records, timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.). Through the search warrants for historical cell site location information, I am seeking the disclosure of any such engineering data for TARGET PHONE 1, TARGET PHONE 3, TARGET PHONE 4 and TARGET PHONE 5, as it may constitute evidence of the TARGET OFFENSES.

138.     As I know from the efforts of the suspects in this investigation, it is very likely that the TARGETS will coordinate an attempt to evade cell site tracking and avoid generating a trail of their whereabouts during the commission of a crime.  The TARGETS are likely to do this by turning off of their cell phones at specific times or locations proximate to the crimes, but the travel of the phone at an anomalous time and then conspicuous deactivation and the similar turning on of a phone during the return trip would prove to be valuable evidence. In those circumstances, a conspicuous absence of a phone from the cellular network during the time in which the crime was committed would prove extremely inculpatory. Conspicuous absence from the network occurring during multiple nights on which crimes were committed would then constitute a very compelling pattern of incriminating evidence. Through the historical cell site location records being sought, a phone can be shown to be conspicuously off the network, and such efforts to avoid the generation of cell site data can be discerned from the history of calls that are made to a particular phone for which the destination phone cannot be located on the cellular network.

139.     I am seeking a period of historical cell site location information for TARGET PHONE 1 of December 10, 2022, through to the present.  As noted above, the historical cell site location information for TARGET PHONE 1 has yielded evidence of DAVILA being in the areas of historical thefts on dates and times proximate to the thefts.  The requested time period of historical cell site location records for TARGET PHONE 1 will permit comparison of the CSLI to the identified thefts that took place in December 2022 and January 2023.

140.     I am further seeking a period of historical cell site location information for TARGET PHONE 3 and TARGET PHONE 4 for January 1, 2022, through to the present in order to compare the cell sites used by TARGET PHONE 3 and TARGET PHONE 4 during the period of the historical thefts.

141.    I am further seeking a period of historical cell site location information for TARGET PHONE 5 for October 1, 2022, through to the present, in order to compare the cell sites used by TARGET PHONE 5 during the period of the historical thefts in November 2022, December 2022 and January 2023.

## VIII.   AUTHORIZATION REQUEST

142.    I request that the Court issue the proposed search warrants, pursuant to 18 U.S.C. § 2703(c) and Fed. R. Crim. P. 41.  Based on this investigation, I believe TARGET PHONE 1, TARGET PHONE 3, TARGET PHONE 4, and TARGET PHONE 5 are located in the District of Massachusetts.

143.    To ensure compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, the warrant applications also seeks authority for a pen register order.  I certify that the information likely to be obtained is relevant to an ongoing investigation by the FBI.

144.    I also request that the Court direct the wireless provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B-1, B-3, B-4, and B-5 unobtrusively and with a minimum of interference with the wireless provider's services, including by initiating a signal to determine the location of TARGET PHONE 1, TARGET PHONE 3, and TARGET PHONE 5 on the wireless network, and at such intervals and times as directed by the government.  The government will compensate the wireless provider for reasonable expenses incurred in furnishing such facilities or assistance.

145.    I further request that, pursuant to the preclusion of notice provisions of 18 U.S.C. §§ 2703(b)(1)(A) & 2705(b), the Court order the wireless provider not to notify any person (including the subscribers or customers to whom the materials relate) of the existence of this

application, the warrants, or the execution of the warrants, for the earlier of one year from the date

of the Court's Order or upon notice by the government within 30 days of the conclusion of its

investigation, unless the Court extends such period under 18 U.S.C. § 2705(b). The wireless

provider may disclose this Order to an attorney for the wireless provider for the purpose of

receiving legal advice.  Non-disclosure is appropriate in this case because the Court's Order relates

to an ongoing criminal investigation that is neither public nor known to all of the targets of the

investigation, and its disclosure may alert the targets to the existence of the investigation.  There

is accordingly reason to believe that notification of the existence of the Order will seriously

jeopardize the investigation, including by giving targets an opportunity to flee or continue flight

from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate

potential witnesses, or endanger the life or physical safety of an individual.  *See* 18 U.S.C. §

2705(b).  Moreover, some of the evidence in this investigation is stored electronically.  If alerted

to the existence of the Order, the targets could destroy that evidence, including information saved

to their personal computers, on other electronic media, or in social media accounts.

146.    I further request that the Court authorize execution of the warrants at any time of

day or night, owing to the potential need to locate TARGET PHONE 1, TARGET PHONE 3, and

TARGET PHONE 5 outside of daytime hours.

## IX.    PROBABLE CAUSE TO BELIEVE THAT SUBJECT VEHICLE 1'S LOCATIONS WILL LEAD TO EVIDENCE OF CRIMINAL ACTIVITY

147.    As noted above, there is specific information that SUBJECT VEHICLE 1 continues

to be used in the commission of the TARGET OFFENSES.  Therefore, there is probable cause to

believe that information about locations and movements of SUBJECT VEHICLE 1 during the

period of tracking being requested will lead to: (a) the identification of potential criminal

associates; (b) the identification of physical locations at which the thefts are occurring; and/or (c)

the identification of locations where planning and coordination of the crimes are taking place, evidence, stolen goods, and proceeds of the crimes are being stored, deposited, concealed, used in monetary and financial transactions and laundered.

## X.   GPS AUTHORIZATION REQUEST

148.   WHEREFORE, the United States requests that the Court issue a warrant authorizing members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on SUBJECT VEHICLE 1 within the District of Massachusetts within 10 calendar days of the warrant's issuance, and to repair, replace, maintain and remove said tracking device from the SUBJECT VEHICLE 1 after the use of the tracking device has ended; to surreptitiously enter 799 S. West Street in Feeding Hills, MA, and/or move SUBJECT VEHICLE 1 to effect the installation, repair, replacement, and removal of the tracking devices; and to monitor the tracking devices for a period of 45 days following the warrant's issuance. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, the United States further requests the Court authorize installation, replacement, maintenance and removal of the tracking device during both daytime and nighttime hours.

149.   Because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation, the United States also requests that the warrant delay notification of the execution of the warrant for a period not to exceed 90 days after the end of the authorized period of tracking (including any extensions thereof), in accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3). As grounds therefore, the use of the GPS tracking device is part of a larger investigation targeting those responsible for the catalytic converter thefts and the individual who purchase the stolen catalytic converters from the thieves.

Notification at the conclusion of the tracking period would alert the targets of the investigation to the existence of the investigation and provide them with an opportunity to destroy evidence, flee from prosecution or otherwise thwart and jeopardize the goals of the investigation.

## XI.   CONCLUSION

150.   Based on the foregoing there is probable cause to believe that the precision location information and historical cell site location information for TARGET PHONE 1, TARGET PHONE 3, TARGET PHONE 4, and TARGET PHONE 5 will reveal evidence of the TARGET OFFENSES committed and becoming committed by DAVILA, TORRES, FELIBERTY, and the other TARGETS, as described in Attachment B1, B-3, B-4 and B-5.

151.   Based on the foregoing I further submit that there is probable cause to believe that (a) the TARGETS have committed, are committing, and will continue to commit the TARGET OFFENSES; (b) SUBJECT VEHICLE 1 is being used to facilitate the TARGET OFFENSES; and (c) the data obtained from the GPS devices about the geographic location of SUBJECT VEHICLE 1 will constitute and/or will lead to evidence, fruits, and instrumentalities of the TARGET OFFENSES as well as to the identification of individuals who are engaged in the commission of those and related crimes.


Sworn to telephonically in accordance with Federal Rule of Criminal Procedure 4.1 on

**Jan 17, 2023**
January _____, 2023.

_____
Special Agent Tyler Delorme
Federal Bureau of Investigation

Telephonically sworn to and subscribed in accordance with Federal Rule of Criminal Procedure 4.1 on January _____, 2023.

**Jan 17, 2023**

_____
Hon. Judith G. Dein
United States Magistrate Judge

**ATTACHMENT A-1**
**Property to Be Searched**

1.      The cellular telephone assigned call number 413-355-6609 (the "TARGET PHONE"), whose service provider for this phone is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054 ("Provider").

2.      Records and information associated with the TARGET PHONE that is within the possession, custody, or control of the Provider.

**ATTACHMENT B-1**
**Particular Things to be Seized**

## I.      Information to be Disclosed by the Provider

All information about the location of the TARGET PHONE for a period of thirty days, during all times of day and night.  "Information about the location of the TARGET PHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the TARGET PHONE.  This warrant does not authorize the collection of any content of any communications.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider is required to disclose the Location Information to the government.  In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference Provider's services, including by initiating a signal to determine the location of the TARGET PHONE on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

The Provider shall also disclose historical records related to the TARGET PHONE for the period of December 10, 2022 through the present, including:

1.  Subscriber information including but not limited to the customer's name, address, date of birth, social security number, other phone numbers on the same account, etc.;

2.  Device identification information including but not limited to the IMEI, IMSI, ESN, MEID, Wi-Fi and Bluetooth MAC Addresses, etc.;

3.  Billing information including but not limited to bank accounts/credit cards used to make payment and dates/locations where cash payments were received;

4.  Complete records of usage for voice, SMS, and data sessions, including but not limited to dates, times, durations, called numbers, calling numbers, cellular towers and sectors utilized for each communication, etc.;

5.  RTT records, PCMD records, NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

6.  Internet activity reports, records of Internet Protocol (IP) usage, etc.

7.  Records relating to the existence of any cloud services associated with the TARGET PHONE.

8. All historical location records, including "historical GPS Locations", "Historical Handset Location data", "Handset triangulation data", aka NELOS (Network Event Location System).

9. A detailed definitions page which identifies all information in the records.

To the extent necessary to provide the authorized location information about TARGET PHONE, this warrant also authorizes the installation of a pen register and trap and trace device on TARGET PHONE.

This search warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.   Information to Be Seized by the Government

All information, records or data that constitutes evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2314 (interstate transportation of stolen property), 18 U.S.C. § 1956 (money laundering), and conspiracy to commit those offenses (hereinafter the "TARGET OFFENSES") involving Rafael DAVILA, Efrain VILLANUEA, Jose TORRES, Santo FELIBERTY, and other coconspirators, including information, data and records relating to:

1. the current and historical whereabouts of Rafael DAVILA;

2. locations of catalytic converter thefts, and the proximity of Rafael DAVILA, and other coconspirators to the location of catalytic converter thefts;

4. locations and physical premises frequented by Rafael DAVILA, including those premises where planning of the TARGET OFFENSES takes place, and where evidence, stolen property, proceeds, and instrumentalities of the TARGET OFFENSES, and things of value are being stored and concealed, and locations targeted by Rafael DAVILA for theft;

5. the identity of the individual or individuals responsible for using and controlling the TARGET PHONE, and other information related to user attribution, and identification of the individuals who use and control phone numbers, email accounts, social media accounts, and other accounts associated or related to the TARGET PHONE;

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

### III.    Non-Disclosure Order

Provider shall not disclose the existence of the search warrant to the listed subscriber or to any other person for a period of one year from the date of this Order, or upon notice by the government within 30 days of the conclusion of its investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b).  See 18 U.S.C. § 2705(b).  Provider may disclose this Order to an attorney for Provider (informal) for the purpose of receiving legal advice.

**ATTACHMENT A-3**
**Property to Be Searched**

1.      The cellular telephone assigned call number 413-612-5858 (the "TARGET PHONE"), whose service provider for this phone is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey, 07054 ("Provider").

2.      Records and information associated with the TARGET PHONE that is within the possession, custody, or control of the Provider.

**ATTACHMENT B-3**
**Particular Things to be Seized**

## I.      Information to be Disclosed by the Provider

All information about the location of the TARGET PHONE for a period of thirty days, during all times of day and night.  "Information about the location of the TARGET PHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the TARGET PHONE.  This warrant does not authorize the collection of any content of any communications.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider is required to disclose the Location Information to the government.  In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference Provider's services, including by initiating a signal to determine the location of the TARGET PHONE on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

The Provider shall also disclose historical records related to the TARGET PHONE for the period of January 1, 2022 through the present, including:

1. Subscriber information including but not limited to the customer's name, address, date of birth, social security number, other phone numbers on the same account, etc.;

2. Device identification information including but not limited to the IMEI, IMSI, ESN, MEID, Wi-Fi and Bluetooth MAC Addresses, etc.;

3. Billing information including but not limited to bank accounts/credit cards used to make payment and dates/locations where cash payments were received;

4. Complete records of usage for voice, SMS, and data sessions, including but not limited to dates, times, durations, called numbers, calling numbers, cellular towers and sectors utilized for each communication, etc.;

5. RTT records, PCMD records, NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

6. Internet activity reports, records of Internet Protocol (IP) usage, etc.

7. Records relating to the existence of any cloud services associated with the TARGET PHONE.

8. All historical location records, including "historical GPS Locations", "Historical Handset Location data", "Handset triangulation data", aka NELOS (Network Event Location System).

9. A detailed definitions page which identifies all information in the records.

To the extent necessary to provide the authorized location information about TARGET PHONE, this warrant also authorizes the installation of a pen register and trap and trace device on TARGET PHONE.

This search warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

All information, records or data that constitutes evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2314 (interstate transportation of stolen property), 18 U.S.C. § 1956 (money laundering), and conspiracy to commit those offenses (hereinafter the "TARGET OFFENSES") involving Rafael DAVILA, Efrain VILLANUEA, Jose TORRES, Santo FELIBERTY, and other coconspirators, including information, data and records relating to:

1. the current and historical whereabouts of Jose TORRES;

2. locations of catalytic converter thefts, and the proximity of Jose TORRES, and other coconspirators to the location of catalytic converter thefts;

4. locations and physical premises frequented by Jose TORRES, including those premises where planning of the TARGET OFFENSES takes place, and where evidence, stolen property, proceeds, and instrumentalities of the TARGET OFFENSES, and things of value are being stored and concealed, and locations targeted by Jose TORRES for theft;

5. the identity of the individual or individuals responsible for using and controlling the TARGET PHONE, and other information related to user attribution, and identification of the individuals who use and control phone numbers, email accounts, social media accounts, and other accounts associated or related to the TARGET PHONE;

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

### III.    Non-Disclosure Order

Provider shall not disclose the existence of the search warrant to the listed subscriber or to any other person for a period of one year from the date of this Order, or upon notice by the government within 30 days of the conclusion of its investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b).  See 18 U.S.C. § 2705(b).  Provider may disclose this Order to an attorney for Provider (informal) for the purpose of receiving legal advice.

**ATTACHMENT A-4**
**Property to Be Searched**

1.    The cellular telephone assigned call number 860-595-9762 (the "TARGET PHONE"), whose service provider for this phone is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408 ("Provider").

2.    Records and information associated with the TARGET PHONE that is within the possession, custody, or control of the Provider.

**ATTACHMENT B-4**
**Particular Things to be Seized**

## I.    Information to be Disclosed by the Provider

This warrant does not authorize the collection of any content of any communications.

The Provider shall disclose historical records related to the TARGET PHONE for the period of January 1, 2022 through the present, including:

1. Subscriber information including but not limited to the customer's name, address, date of birth, social security number, other phone numbers on the same account, etc.;

2. Device identification information including but not limited to the IMEI, IMSI, ESN, MEID, Wi-Fi and Bluetooth MAC Addresses, etc.;

3. Billing information including but not limited to bank accounts/credit cards used to make payment and dates/locations where cash payments were received;

4. Complete records of usage for voice, SMS, and data sessions, including but not limited to dates, times, durations, called numbers, calling numbers, cellular towers and sectors utilized for each communication, etc.;

5. RTT records, PCMD records, NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

6. Internet activity reports, records of Internet Protocol (IP) usage, etc.

7. Records relating to the existence of any cloud services associated with the TARGET PHONE.

8. All historical location records, including "historical GPS Locations", "Historical Handset Location data", "Handset triangulation data", aka NELOS (Network Event Location System).

9. A detailed definitions page which identifies all information in the records.

To the extent necessary to provide the authorized location information about TARGET PHONE, this warrant also authorizes the installation of a pen register and trap and trace device on TARGET PHONE.

This search warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information.  *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

All information, records or data that constitutes evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2314 (interstate transportation of stolen property), 18 U.S.C. § 1956 (money laundering), and conspiracy to commit those offenses (hereinafter the "TARGET OFFENSES") involving Rafael DAVILA, Efrain VILLANUEA, Jose TORRES, Santo FELIBERTY, and other coconspirators, including information, data and records relating to:

1. the current and historical whereabouts of Santo FELIBERTY;

2. locations of catalytic converter thefts, and the proximity of Santo FELIBERTY, and other coconspirators to the location of catalytic converter thefts;

4. locations and physical premises frequented by Santo FELIBERTY, including those premises where planning of the TARGET OFFENSES takes place, and where evidence, stolen property, proceeds, and instrumentalities of the TARGET OFFENSES, and things of value are being stored and concealed, and locations targeted by Santo FELIBERTY for theft;

5. the identity of the individual or individuals responsible for using and controlling the TARGET PHONE, and other information related to user attribution, and identification of the individuals who use and control phone numbers, email accounts, social media accounts, and other accounts associated or related to the TARGET PHONE;

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## III.    Non-Disclosure Order

Provider shall not disclose the existence of the search warrant to the listed subscriber or to any other person for a period of one year from the date of this Order, or upon notice by the government within 30 days of the conclusion of its investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b).  See 18 U.S.C. § 2705(b).  Provider may disclose this Order to an attorney for Provider (informal) for the purpose of receiving legal advice.

**ATTACHMENT A-5**
**Property to Be Searched**

1.      The cellular telephone assigned call number 860-712-9926 (the "TARGET PHONE"), whose service provider for this phone is AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, FL 33408 ("Provider").

2.      Records and information associated with the TARGET PHONE that is within the possession, custody, or control of the Provider.

**ATTACHMENT B-5**
**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

All information about the location of the TARGET PHONE for a period of thirty days, during all times of day and night.  "Information about the location of the TARGET PHONE" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the TARGET PHONE.  This warrant does not authorize the collection of any content of any communications.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider is required to disclose the Location Information to the government.  In addition, Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference Provider's services, including by initiating a signal to determine the location of the TARGET PHONE on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

The Provider shall also disclose historical records related to the TARGET PHONE for the period of October 1, 2022 through the present, including:

1.  Subscriber information including but not limited to the customer's name, address, date of birth, social security number, other phone numbers on the same account, etc.;

2.  Device identification information including but not limited to the IMEI, IMSI, ESN, MEID, Wi-Fi and Bluetooth MAC Addresses, etc.;

3.  Billing information including but not limited to bank accounts/credit cards used to make payment and dates/locations where cash payments were received;

4.  Complete records of usage for voice, SMS, and data sessions, including but not limited to dates, times, durations, called numbers, calling numbers, cellular towers and sectors utilized for each communication, etc.;

5.  RTT records, PCMD records, NELOS records, TrueCall records, and all other records containing timing advance measurements and distance-to-tower measurements for all technologies (CDMA, GSM, UMTS, LTE, etc.); and

6.  Internet activity reports, records of Internet Protocol (IP) usage, etc.

7.  Records relating to the existence of any cloud services associated with the TARGET PHONE.

8. All historical location records, including "historical GPS Locations", "Historical Handset Location data", "Handset triangulation data", aka NELOS (Network Event Location System).

9. A detailed definitions page which identifies all information in the records.

To the extent necessary to provide the authorized location information about TARGET PHONE, this warrant also authorizes the installation of a pen register and trap and trace device on TARGET PHONE.

This search warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to Be Seized by the Government

All information, records or data that constitutes evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2314 (interstate transportation of stolen property), 18 U.S.C. § 1956 (money laundering), and conspiracy to commit those offenses (hereinafter the "TARGET OFFENSES") involving Rafael DAVILA, Efrain VILLANUEA, Jose TORRES, Santo FELIBERTY, and other coconspirators, including information, data and records relating to:

1. the current and historical whereabouts of Santo FELIBERTY;

2. locations of catalytic converter thefts, and the proximity of Santo FELIBERTY, and other coconspirators to the location of catalytic converter thefts;

4. locations and physical premises frequented by Santo FELIBERTY, including those premises where planning of the TARGET OFFENSES takes place, and where evidence, stolen property, proceeds, and instrumentalities of the TARGET OFFENSES, and things of value are being stored and concealed, and locations targeted by Santo FELIBERTY for theft;

5. the identity of the individual or individuals responsible for using and controlling the TARGET PHONE, and other information related to user attribution, and identification of the individuals who use and control phone numbers, email accounts, social media accounts, and other accounts associated or related to the TARGET PHONE;

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the

disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## III.    Non-Disclosure Order

Provider shall not disclose the existence of the search warrant to the listed subscriber or to any other person for a period of one year from the date of this Order, or upon notice by the government within 30 days of the conclusion of its investigation, whichever is earlier, unless the Court extends such period under 18 U.S.C. § 2705(b).  See 18 U.S.C. § 2705(b).  Provider may disclose this Order to an attorney for Provider (informal) for the purpose of receiving legal advice.

**ATTACHMENT C-1**

The roads, ways and parking spots surrounding 799 S. West Street, Feeding Hills, Massachusetts., and entry into the parking / driveway of 799 S. West Street, Feeding Hills, Massachusetts. A satellite image of 799 S. West Street, Feeding Hills, Massachusetts and driveway / parking area follow, with the general area of driveway/parking area outlined in red on the satellite image:

